## OLD COLONY TRUST COMPANY *v.* CITY OF SEATTLE ET AL. ·

### APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON. ·

No. 194. Argued March 5, 1926.—Decided June 1, 1926.

1. In a suit in the District Court to enjoin distraint of property to satisfy taxes or for subrogation to a tax lien on other property, the effect of payment of the taxes under protest and alleged coercion, before dismissal of the bill for want of jurisdiction, and the effect of a subsequent judgment in another suit, are questions relating to the merits and cannot be considered as grounds for dismissing a jurisdictional appeal. P. 429.

2. In virtue of the Eleventh Amendment, a federal district court has no jurisdiction over a suit by a private party against a State. P. 430.

3. A bill against state tax-collecting agents to enjoin, not the collection, but a wrongful and abusive use of the process of collecting, state taxes, is not a suit against the State. P. 430.

Reversed.

APPEAL from a judgment of the District Court dismissing the suit for want of jurisdiction. The appellant, as trustee for bonds secured on street railway property, sued the City of Seattle, The County of King, W. W. Shields, as Treasurer of King County, and Matt W. Starwich, as Sheriff of King County, to enjoin wrongful and inequitable distraint of that property for collection of taxes.

*Messrs. James B. Howe, Hugh A. Tait,* and *Edgar L. Crider* for appellant, submitted.

*Messrs. Howard A. Hanson* and *George A. Meagher,* with whom *Messrs. Ewing D. Colvin* and *Thomas J. L. Kennedy* were on the brief, for appellees.

Mr. Justice Van Devanter delivered the opinion of the Court.

In the beginning of the year 1919 the Puget Sound Power & Light Company owned and was operating two public utilities in the City of Seattle—one a power and lighting system and the other a street railway system. It still owns and operates the power and lighting system, and the Old Colony Trust Company is the trustee in a mortgage which was given thereon in 1921 to secure a large issue of bonds still outstanding.

The City of Seattle now owns and operates the street railway system. The transfer from the Puget Sound Company to the city was effected March 31, 1919, under a contract between them entered into six weeks before. Anticipating that the system would be taxed for that year by reason of the company's ownership in the early months, they stipulated in the contract, and again in the deed of transfer, that "state, county and municipal taxes" laid on the property for 1919 should be borne and paid by them in proportions conforming to their respective periods of possession during the year. On that basis the company became obligated to pay one-fourth and the city three-fourths.

Shortly after the transfer, state, county, and municipal taxes aggregating over $400,000 were laid on the property for the year 1919. Of that amount over $179,000 represented taxes imposed by the city. The taxes became a lien on the property March 15, 1919, and were listed against the company in the tax records by reason of its ownership on that date. The county treasurer was to collect the taxes and pay the money over to the State, county, and city in definite proportions. If it became necessary to collect through distraint and sale that was to be done through the sheriff.

When the taxes became due the city refused to pay any part of them; and the county treasurer refused to receive

from the company the part allotted to it by the contract and deed of transfer, and also refused to receive from it the whole of the state and county taxes unless it also paid the city taxes. Then, because the company would not accede to paying all, the treasurer caused the sheriff to take steps to collect the whole out of the power and lighting system by distraint and sale.

The present suit was brought in the federal district court by the Old Colony Trust Company, the mortgagee of the power and lighting system, to prevent the threatened distraint and sale of that property to pay the taxes so laid on the street railway property. The bill grounded the jurisdiction on diverse citizenship, the plaintiff being a Massachusetts corporation and the defendants being public corporations and individual citizens of the State of Washington. The original bill was brought when the sheriff was about to distrain the property. Besides setting forth the matters we have stated, it charged that the defendants were acting in concert and collusion to collect out of the mortgaged power and lighting property the taxes which had been laid on the street railway property and made a special lien thereon, and thus to relieve the city from the performance of its obligation under the contract and deed. The principal prayer was that the defendants be enjoined from resorting to the mortgaged property until after appropriate steps were taken to collect the taxes out of the property on which they were laid and were a lien. There was also a prayer for an interlocutory injunction. After the bill was filed the sheriff distrained the mortgaged property, as before threatened, and gave public notice of intended sale. This was set up by the court's leave in a supplemental bill, which repeated the prayers of the original bill and prayed further that the plaintiff, if coerced by the threatened sale into paying the taxes, be accorded the benefit of the lien on the street railway property.

The defendants appeared and moved that the two bills—original and supplemental—be dismissed for want of jurisdiction of the subject matter and want of equity, both said to be apparent on the face of the bills. After a hearing on the prayer for an interlocutory injunction and the motion to dismiss, the prayer for the injunction was refused; and three weeks later a decree was entered dismissing the bills for want of jurisdiction. The court allowed a direct appeal to this Court, and also certified that the sole ground of the dismissal was that the suit was, in effect, a suit against the State and therefore not cognizable in a federal district court. The statute in force when the appeal was taken limits the consideration here to the jurisdictional question shown in the certificate.

The defendants ask that the appeal be dismissed on two grounds in support of which they make a showing by affidavits. One ground is that the taxes have been paid and that this has put an end to the effort to collect them from the mortgaged property. The showing is that the taxes were paid by the mortgagor almost three weeks prior to the decree of dismissal. The plaintiff makes a counter showing that the payment was made by it and the mortgagor acting together; that they were co-erced into this by an impending sale which the court refused to restrain; and that they at the time not only protested that the distraint and intended sale were arbitrary and an abusive use of legal process but reserved all their legal and equitable rights. Obviously, the fact of payment and its legal effect pertain to the merits and cannot be considered on this jurisdictional appeal. The other ground is that since the appeal was taken a decree has been rendered in another suit between the mortgagor and some or all of the defendants which determined the questions relating to these taxes. That decree may have a bearing on the merits, but affords no ground for dismissing this appeal. *Illinois Central R. R. Co.* v. *Adams,*

180 U. S. 28, 31; *Male v. Atchison, Topeka & Santa Fe Ry. Co.,* 240 U. S. 97, 99.

We come then to the question whether the suit was in effect a suit against the State. If it was, the court below was forbidden by the Eleventh Amendment to the Constitution to take jurisdiction of it; otherwise the jurisdiction was plain.

The bills did not name the State as a defendant; nor did they complain of any act or omission by it, or seek any relief against it. They did show that some of the taxes were state taxes and when collected were to be paid over to the State. But they were not directed against the collection of the taxes. On the contrary, they distinctly treated the taxes as valid and collectible. The complaint was that those who were attempting the collection were wrongfully pursuing a course which was so much in violation of the rights of the plaintiff as to entitle it to an injunction—not against collection, but against that course of action. On this point the bills alleged that the street railway property on which the taxes were laid and were a special lien was readily available and amply sufficient to satisfy them; that the city in acquiring that property had engaged to pay three-fourths of them; and that with knowledge of these matters the defendants wrongfully and collusively entered into an arrangement to refrain from collecting any part of the taxes out of the street railway property or from the city and to collect them out of the power and lighting property which was mortgaged to the plaintiff; and that the distraint and threatened sale were in pursuance of that arrangement and intended to relieve the city from its obligation through a sacrifice of the plaintiff's mortgage security. In short, the charge was that the defendants were wrongfully and abusively using the process of collection for a purpose and in a mode at variance with applicable legal and equitable principles and hurtful to the plaintiff.

We think it apparent from this review of the bills that the suit was not in name or in effect a suit against the State, but only a suit against state agents to restrain them from wrongful acts threatened and attempted under color of their agency.

The test to be applied is illustrated in *Hopkins* v. *Clemson College,* 221 U. S. 636. There a state agent when sued on account of a wrongful act done under color of the agency advanced the contention that the State was a necessary party and that its immunity from suit extended to the agent. But this Court, on a full review of prior decisions, rejected the contention and said (p. 642):

" But immunity from suit is a high attribute of sovereignty—a prerogative of the State itself—which cannot be availed of by public agents when sued for their own torts. The Eleventh Amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the State's citizens. To grant them such immunity would be to create a privileged class free from liability from wrongs inflicted or injuries threatened. Public agents must be liable to the law, unless they are to be put above the law."

In *Poindexter* v. *Greenhow,* 114 U. S. 270, 285, *et seq.,* the question presented was whether a suit against a tax collector to recover specific property which he had distrained for a state tax and was proceeding to sell was in substance a suit against the State. Prior to the distraint the plaintiff had tendered in payment of the tax certain coupons from state bonds, and the collector had rejected them as not receivable for the tax. The plaintiff stood on the tender and after the distraint brought the suit on the theory that the tender was valid and the subsequent distraint wrongful. This Court held that the suit was not against the State in form or in substance, but

against the collector for his personal wrong. In the opinion it was said (pp. 293, 299):

"Tried by every test which has been judicially suggested for the determination of the question, this cannot be considered to be a suit against the state. . . . His [the plaintiff's] tender, as. we have already seen, was equivalent to payment so far as concerns the legality of all subsequent steps by the collector to enforce payment by distraint of his property. He has the right to say he will not pay the amount a second time, even for the privilege of recovering it back. And if he chooses to stand upon a lawful payment once made, he asks no remedy to recover back taxes illegally collected, but may resist the exaction, and treat as a wrongdoer the officer who seizes his property to enforce it."

Other cases well in point, although not relating to taxes, are. *Philadelphia Company* v. *Stimson*, 223 U. S. 605 619; *Johnson* v. *Lankford*, 245 U. S. 541.

The dismissal below for want of jurisdiction was error.

*Decree reversed.*

MR. JUSTICE HOLMES did not participate in the consideration or decision of this case.