### HAMILL et al. v. HAWKS et al.
### No. 511.

Circuit Court of Appeals, Tenth Circuit.
April 14, 1932.

Charles B. Cochran, of Oklahoma City, Okl. (Ames, Cochran, Ames & Monnet, of Oklahoma City, Okl., on the brief), for appellants.

W. C. Lewis, Asst. Atty. Gen., and Purman Wilson, Co. Atty., of Purcell, Okl. (J. Barry King, Atty. Gen., and Person Woodall, Co. Atty., of Norman, Okl., on the brief), for appellees.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge.

Appellants, citizens and residents of Illinois, brought this suit to obtain protection by writ of injunction of their claimed ownership of a bridge across the South Canadian River at Purcell, Oklahoma, and their alleged right to charge and collect tolls from the public for its use. The river is the dividing line between McClain and Cleveland counties. The bridge was constructed as a toll bridge under franchises from those counties and was operated as a toll bridge. The issue raised by motions to dismiss is one of law,—whether

the franchises had expired when the order of dismissal was entered on May 29, 1931, from which this appeal was taken.

The two franchises, exhibited with the bill, were issued to Dorset Carter and Tom Halsell. The one from McClain county on April 22, 1911, and from Cleveland county on May 16, 1911. Each granted to Carter and Halsell and their assigns the right to construct, maintain, and operate the bridge as a toll bridge and collect tolls thereon. They prescribed the same schedule of tolls to be charged, followed by this paragraph:

"The tolls above enumerated shall not be increased by the Bridge Company except as is now, or may hereafter be legally provided, but may be reduced by said Bridge Company upon the posting by them of proper notices as is provided by law."

Each of the franchises also contained this:

"That the grants herein made shall be perpetual, subject only to such limitations as is by law now or may hereafter be provided."

They further stated that the grantees might transfer all their rights and privileges to any individual or corporation organized under the laws of the State of Oklahoma, and that their assigns should collect the tolls.

On May 18, 1911, Dorset Carter, appellant Walling, and one Hamill caused the Purcell-Lexington Toll Bridge Company to be incorporated as an Oklahoma corporation, and the franchises that had been granted to Carter and Halsell by the two counties were transferred to the corporation. It completed the bridge, maintained and operated it, and received tolls until April 2, 1931, when it conveyed by deed whatever rights it had in the bridge and franchises to Walling, Hamill, and Carter. Carter later conveyed his interest to Hamill and Walling. This bill was filed on May 15, 1931, three days before the corporate life of the bridge company expired. It names as defendants the three members of the state highway commission, the attorney general of Oklahoma, the county attorneys of the two counties and six individuals, three of whom reside in McClain county and three in Cleveland county. The bill of complaint alleged:

"That the defendants, and each of them, are contending that the right to operate said toll bridge and to collect tolls from persons using the same will terminate with the corporate existence of the Purcell-Lexington Toll Bridge Company on the 18th day of May, 1931, and that the said bridge will at that time become a free bridge and a part of

the State Highway System of the State of Oklahoma, with the right and privilege of the citizens of the State of Oklahoma to use the same as a public highway without the payment of tolls."

It is further alleged that the franchises to operate the bridge as a toll bridge and collect tolls thereon were granted to individuals and not to the corporation; that they continue in full force and effect in accordance with their terms; that the right to continue in possession and operation of the bridge and take tolls is now in the plaintiffs; that the three members of the state highway commission will, unless restrained by the court, take charge of said bridge as a part of the highway system of the state in violation of plaintiffs' rights under said franchises and thus deprive plaintiffs of their property for the use and benefit of the traveling public without compensation, and thus deprive them of the right to continue in possession of said bridge and the collection of tolls from persons using the same; that the attorney general of the state has threatened to institute proceedings against complainants to deprive them of their claimed rights, and contends that if complainants collect tolls after May 18, 1931, they will be subject to a forfeiture of $25.00 to each person from whom toll is collected and will further be guilty of obstructing the public highway and thus be subject to a fine not exceeding $100.00 for each offence; that the county attorney of each of said counties threatened like proceedings against complainants; that citizens of the state who use and who will continue to use said bridge are so numerous that it is impossible to make all of them parties, and the six individual defendants are named as defendants as fairly representative of the entire class of citizens who travel over and across said bridge; that because of these threatened prosecutions, both civil and criminal, the invasion of plaintiffs' rights and the taking of their property without right and without compensation, they have no adequate remedy at law; that they will be subjected to a multiplicity of suits by the defendants, and by other citizens of the state who will desire to use said bridge, and because thereof they ask that the writ of injunction may issue and their claimed rights adjudicated.

The two county attorneys and the individual defendants moved to dismiss on the ground that the bill did not state facts sufficient to entitle the plaintiff to relief. The attorney general and members of the state highway commission moved to dismiss on the same ground and also on the additional ground that the suit was one against the state.

Obviously, the suit is not in terms against the state, and whether the joining of the attorney general and the members of the state highway commission as defendants has the effect of making it a suit against the state insofar as they are parties depends upon an examination of the bill on its merits, which apparently charges that those officers are threatening to commit acts without right or in excess of their powers. If so construed, when controlling principles of law are applied to the allegations of the bill, the suit would not be one against the state. Reagan v. Farmers' L. & T. Co., 154 U. S. 362, 390, 14 S. Ct. 1047, 38 L. Ed. 1014; Old Colony Trust Co. v. City of Seattle, 271 U. S. 426, 431, 46 S. Ct. 552, 70 L. Ed. 1019; Poindexter v. Greenhow, 114 U. S. 270, 285, 330, 5 S. Ct. 903, 962, 29 L. Ed. 185, 207; Weiland v. Pioneer Irr. Co. (C. C. A.) 238 F. 519; Missouri, K. & T. Ry. Co. v. Missouri Warehouse Commissioners, 183 U. S. 53, 59, 22 S. Ct. 18, 46 L. Ed. 78; Magruder v. Belle Fourche Valley Water Users' Ass'n (C. C. A.) 219 F. 72, 78; Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764. We turn then to the other ground of the demurrer.

The bill of complaint alleged that the Purcell-Lexington Toll Bridge Company was organized on May 18, 1911, for the purpose of erecting, constructing, and maintaining, or to lease or purchase and operate the toll bridge and approaches thereto over and across the South Canadian River at or near the city of Purcell, McClain county, Oklahoma, to the east bank of said river in Cleveland county, said state, for the passage of footmen, passengers, cattle, and vehicles of all kinds, and all wires for the transmission of electric currents for speech, light or power, and for pipes and mains for water and gas, and to collect and receive tolls for such service, and to lease or sell such rights over said bridge and the approaches thereto; that said articles of incorporation provide: "That the term for which the corporation is to exist is twenty years."

Article 6 of chapter 34, Compiled Oklahoma Statutes, 1921 (section 5366 et seq.), is entitled "Bridge Corporations." The first section under that article, numbered 5366 of the compilation, reads thus:

"The term of existence of a bridge corporation shall not exceed twenty years; and in addition to the matters required by sec-

tion 5304 [of said statutes] every corporation formed for the purpose of constructing a bridge over any stream of water must, in the articles of incorporation, specify as follows: The place where such bridge is to be built, over what stream; that the banks on both sides of the stream where such bridge is to be built are owned by such corporation, or that it has obtained in writing the consent of the owners of the banks, where the bridge is to be built, to build the bridge; or that the banks at such place are included within and part of a public highway, and in such case that the consent in writing of the board of county commissioners of the county or counties for the erection of such bridge by such corporation has been obtained, and it must file a certified copy of its articles of incorporation in the office of the register of deeds of the county or counties in which the bridge or any part thereof is situated or to be located: Provided, that nothing in this section shall be construed as regulating companies incorporated in the State of Oklahoma for the purpose of erecting and maintaining bridges across boundary streams or streams between the State of Oklahoma and any other state or territory."

The following section 5367 provides:

"No such corporation shall construct or take tolls on a bridge until authority is granted therefor by the board of county commissioners of the county or counties in which it is to be located."

The Article further provides for the posting of the rates of tolls, the collection thereof, and annual report by the bridge corporation to the boards of county commissioners showing cost of construction, appendages and appurtenances of the bridge, the amount of money expended thereon since construction for repairs and incidental expenses, the capital stock, how much paid in and how much actually expended on the bridge, the amount received for tolls during each year, the amount of dividends, the indebtedness of the corporation and for what incurred, the net amount of profits, and such other facts respecting the business of the corporation as the board of county commissioners may require. The corporation is also required to publish for four weeks in a newspaper published in the town or city nearest such bridge its annual report, and a penalty is provided for failure to do so. The statute gives authority to collect tolls from those who use the bridge and provides a penalty in favor of the corporation owning the bridge against those who forcibly or fraudulently cross over the

bridge without paying the legal toll. It is further provided that the corporation shall not demand or receive toll whenever the bridge is not in good and safe condition for use.

The grants from each county to construct and maintain the bridge and collect tolls were in terms to be perpetual, and there was no law or constitutional provision in effect when they were made, or now, that prohibited or limited such grants as to duration, nor were there prohibitions against making such grants to individuals and their assigns. But it is argued that by necessary implication such grants could be made only to a bridge company organized as a corporation under the laws of the state, and that the charter of such company being limited to an existence of twenty years without express power of renewal the franchises to maintain the bridge and take tolls expired with the corporate life of the Purcell-Lexington Toll Bridge Company on May 18, 1931. It is further argued that references in the grants to the "Bridge Company" indicate clearly that the two individuals to whom the grants were made took the grants for the company to be formed which would have been a compliance with the terms of the statute, and that individuals according to the terms of the statute could not take such grants in their own interests. Conceding the last proposition to be sound, it does not stand in the way of the right of said bridge company to convey, as it did on April 2, 1931, all of its rights to maintain the bridge and collect tolls to Walling, Hamill, and Carter during the existence of the franchises thereafter as long as they continued. It was so decided by the Supreme Court of Oklahoma in Postal Bridge Co. v. State ex rel. Dabney, Attorney General, 139 Okl. 225, 282 P. 462. In Central Pacific Railroad v. California, 162 U. S. 91, 124, 16 S. Ct. 766, 778, 40 L. Ed. 903, the Supreme Court said of franchises of this nature:

"Generalized, and divested of the special form which it assumes under a monarchical government based on feudal traditions, a franchise is a right, privilege, or power of public concern, which ought not to be exercised by private individuals at their mere will and pleasure, but should be reserved for public control and administration, either by the government directly, or by public agents, acting under such conditions and regulations as the government may impose in the public interest, and for the public security. Such rights and powers must exist under every form of society. They are always educed by

the laws and customs of the community. Under our system, their existence and disposal are under the control of the legislative department of the government, and they cannot be assumed or exercised without legislative authority. No private person can establish a public highway, or a public ferry, or railroad, or charge tolls for the use of the same, without authority from the legislature, direct or derived. These are franchises. No private person can take another's property, even for a public use, without such authority, which is the same as to say that the right of eminent domain can only be exercised by virtue of a legislative grant. This is a franchise."

They are property rights of value and are entitled to protection against invasion or destruction as long as they exist according to their terms, when the granting power that gives them acts within authority conferred upon it. The Supreme Court of Oklahoma has not held that such franchises can be granted only to an Oklahoma corporation, nor that they cannot be made perpetual, nor that they are not assignable, nor that they do not continue beyond the life of the corporation to which they are first issued, if they have been issued for a longer term than the life of the corporation. It has been held (Postal Bridge Company Case, supra) that they may be assigned to, exercised and enjoyed by individuals; and we believe the general rule of law both state and national to be that in the absence of such prohibitions they continue to exist as valid contracts in favor of assignees.

We find no reason for saying such franchises may not be issued in the first instance to individuals. The Oklahoma Supreme Court in the Postal Bridge Company .Case referred to the fact that such franchises could be held and enjoyed by individuals who had a franchise for a toll road where it became necessary on the line thereof to erect and maintain such bridges; also it is provided in section 10104 of the state statutes that individuals can obtain such franchises to erect and maintain bridges and collect tolls where they bridge streams which are boundary lines of the state. It therefore seems to us in view of what has been said that the implication that these franchises could not be granted for more than twenty years does not arise and cannot be deduced from the terms of said section 5366; but that the two counties had the power to grant these perpetual franchises, that they were assignable to the plaintiffs, and they are now vested property rights in them.

The power is educed from section 5793, Compiled Oklahoma Statutes, which gives to county boards general authority to construct and repair bridges and to open and lay out highways and perform such other duties required by law, and from said sections 5366 and 5367, supra. The Supreme Court of Michigan in Grand Rapids Bridge Co. v. Prange, 35 Mich. 400, 24 Am. Rep. 585, held that a statute of that state, identical in substance to said 5367 of the Oklahoma Statutes, was alone sufficient to confer power on the board to fix the term of existence of a franchise to construct and maintain a toll bridge and collect tolls for its use, regardless of whether the term so fixed be coincident with the life of the grantee. The Grand Rapids Bridge Company sued Prange for tolls which he had refused to pay. The corporate life of the company had not expired, but its twenty year franchise had expired when the claimed tolls were incurred. Chief Justice Cooley speaking for the court in that case said:

"The purpose of the organization was to build the bridge in question; but as the river at this point was a navigable stream, the assent of the supervisors of the county was essential before the bridge could be constructed. —Comp. L. 1871, § 2649. The same board was also by law the competent authority to fix the tolls. The assent was given by resolution of the board dated January 17, 1852 [one year after the bridge company was organized], 'to erect, rebuild, repair and keep up and use for the sole use and profit of said company, a toll-bridge, * * * for the term of twenty years;' and the tolls were fixed at the same time. The bridge was duly constructed and tolls collected of passengers for the term of this permission, but after the twenty years had expired, the defendant refused any longer to pay tolls, and passed over the bridge repeatedly without doing so. The plaintiff, claiming the right to continue to exact tolls according to the established rates, has brought this suit."

The bridge company contended in that case that it was organized for the purpose of constructing the bridge with a life of thirty years and that its franchise to take tolls could not be restricted to a shorter term. Chief Justice Cooley in response to that contention said:

"And it cannot be doubted that the board might in advance have negotiated with the parties proposing to form a corporation, and required of them, as a condition of assent to the building of the bridge, that the cor-

porate life should be limited to any number of years specified. There might be reasons in the growing business of the place and of the river which would seem to require such a limitation; and the authority conferred upon the local board to give or withhold assent would lose very much of its value if it were confined within unvarying limits. It is not unreasonable to suppose that consent might sometimes be withheld under such circumstances when otherwise it would not be.

"But if the supervisors could bargain for a limitation of time before the corporate organization, so they could afterwards. The plaintiff by the organization only acquired corporate powers; it gained nothing that was originally within the control of the supervisors. That board was bound by nothing that so far had been done. The members of the board may not in any manner have become aware of the steps to organize until application was made to them for permission to construct the bridge, and they were at liberty to act on such public considerations as were then presented, and with no more concession of privilege than they supposed the public interest to require. They might have consented for five years, leaving a future board at the end of that time to consent, or refuse to consent, according as the public good would appear to be consulted by the one course or by the other. On this part of the case there does not appear to us to be any serious question. * * * But there is a question of the continued existence of the franchise to take tolls. That franchise was distinct from the corporate franchise, and came into existence by grant, not directly from the state, but from the local board. The estate of the corporation in it was expressly limited to twenty years; and when that period came to an end, the estate ceased also. * * * In this case the franchise in dispute is one which only theoretically proceeds from the state. The board of supervisors confer it. * * * "

The width of streams, the extent and effects of flood waters, the cost of construction and maintenance of bridges, and the amount and character of probable use are all variable and material elements for the board's consideration in issuing the franchise. Here the two boards were in agreement that it should be perpetual.

These franchises being perpetual and assignable extended beyond the life or lives of the first takers, whether corporate or individual, according to the settled rules. And the Legislature in conferring power on coun-

ties to issue them and the counties in executing that power acted in discharge of proprietary or business powers, as distinguished from their governmental powers, so that the relation between them and the party to whom the franchises were issued was contractual. Illinois T. & S. Bank v. Arkansas City (C. C. A.) 76 F. 271, 34 L. R. A. 518; Pikes Peak Power Co. v. Colorado Springs (C. C. A.) 105 F. 1; City of Winona v. Botzet (C. C. A.) 169 F. 321, 23 L. R. A. (N. S.) 204; Louisville v. Cumberland Tel. Co., 224 U. S. 661, 32 S. Ct. 572, 56 L. Ed. 934; Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. 368, 394, 395, 22 S. Ct. 410, 46 L. Ed. 592; City of Owensboro v. Cumberland Tel. Co., 230 U. S. 58, 70, 71, 33 S. Ct. 988, 57 L. Ed. 1389; Boise Water Co. v. Boise City, 230 U. S. 84, 33 S. Ct. 997, 57 L. Ed. 1400; Old Colony Trust Co. v. Omaha, 230 U. S. 100, 33 S. Ct. 967, 57 L. Ed. 1410; Covington v. South Covington St. Ry. Co., 246 U. S. 413, 416, 38 S. Ct. 376, 62 L. Ed. 802; Northern Ohio Trac. Co. v. Ohio, 245 U. S. 574, 38 S. Ct. 196, 62 L. Ed. 481, L. R. A. 1918E, 865; Calder v. Michigan, 218 U. S. 591, 600, 31 S. Ct. 122, 54 L. Ed. 1163. The cases in the Supreme Court just cited state the rule that a corporation is capable of taking grants of franchises of a longer duration than its own corporate existence, and that where a franchise is issued to A. and assigns without limit of duration it is perpetual. See, also, City and County of Denver v. Denver Tramway Corp. (C. C. A.) 23 F.(2d) 287, 299, 300. In State v. Des Moines City Ry. Co., 159 Iowa, 259, 140 N. W. 437, 457, the Supreme Court of that state said:

"If, however, the grant is to successors or assigns, it does not terminate with the life of the corporation to which it is granted, but may be for a term beyond the corporate life of the original grantee."

In State ex rel. v. Laclede Gas-Light Co., 102 Mo. 472, 14 S. W. 974, 979, 15 S. W. 383, 22 Am. St. Rep. 789, the court said:

"The capacity of a corporation to take, and its power to convey, property, real, personal, or mixed, differs in no essential particular from the capacity and power of natural persons in like circumstances. [Citations.] To deny this proposition would be to deny to an individual the capacity to take title in fee, because life's narrow span would not admit of his perpetual enjoyment of the title thus taken. But this is not the only answer to this objection. The contract in question was entered into not only with the St.

Louis Gas-Light Company, but with its 'successors and assigns.' " " " "

In State ex rel. v. Scott County Road Co., 207 Mo. 54, 105 S. W. 752, 13 Ann. Cas. 656 (Id., 215 U. S. 336, 30 S. Ct. 110, 54 L. Ed. 221), the same legislative act that incorporated the company for fifty years limited its right to take tolls to fifty years. In People ex rel. v. Anderson, etc., Co., 76 Cal. 190, 18 P. 308, the right to take tolls on a wagon road was limited to fifteen years, and the court necessarily held that it became a public road at the end of the period stated. In Rockwith v. State Road Bridge Co., 145 Mich. 455, 108 N. W. 785, the court held that the bridge company's right to take tolls ceased on expiration of the corporate life of the company, because the grant was only to the company, and not to it, its successors and assigns. In State v. Lawrence Bridge Co., 22 Kan. 308, the legislative act of the Territory of Kansas granted to B. et al., or their assigns, the exclusive right or privilege of building and maintaining a bridge across the Kaw River for the period of twenty-one years. A corporation was organized by the grantees which took over and exercised the rights given in the franchise. It was held that the franchise rights to maintain the bridge as a toll bridge expired at the end of the twenty-one years. In Virginia Canon Toll Road Co. v. People, 22 Colo. 429, 45 P. 398, 37 L. R. A. 711, it appears that a wagon road company was organized in December, 1865, under a statute that gave it corporate existence for twenty years. The wagon road company was organized for the purpose of constructing and operating a toll road. It did so until October, 1881, when it transferred all rights it had, if any, to the toll road company, and it then operated for a time the toll road which had been constructed by the wagon road company, whereupon its rights were challenged by quo warranto. Each company had a corporate existence of twenty years, and the toll road company contended that the property it had acquired from the wagon road company was valuable only in case it had the right to collect tolls, that it was organized to operate the toll road, and, unless it could do so it would be deprived of its property without due process. It does not appear whether a time limit was fixed to the franchise to take tolls, nor whether those rights were made assignable. The court held that the toll road company acquired from the wagon road company only such rights as the latter had, and inasmuch as its rights expired with its corporate life the toll road company had no rights thereafter. It was further held that

inasmuch as the Colorado Constitution prohibited the granting of irrevocable franchises by the General Assembly, the prohibition could be evaded if assignments of such grants were permissible. This case does not, in our judgment, have application to the facts here in hand.

■ It has been suggested that section 32 of article 2, entitled Bill of Rights, in the Oklahoma Constitution prohibits perpetual franchises, and that it was so intimated, if not decided, in City of Okmulgee v. Okmulgee Gas Co., 140 Okl. 88, 282 P. 640, 651. Bouvier's Law Dictionary defines Bill of Rights:

"A formal and public declaration of popular rights and liberties. The English Bill of Rights is a statute passed in 1689, affirming and asserting certain rights of the British people. In the United States, such bills have been incorporated with the constitutions of many of the states."

The subject is dealt with extensively in Blackstone's Commentaries, Book I, Chap. I, entitled "Of the Absolute Rights of Individuals." Said section 32 in the Oklahoma Constitution reads:

"Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this State."

We do not doubt that the word "perpetuities" in said section was not intended to mean or be equivalent to perpetual franchises, but was intended to limit the power to pass titles that would vest in futuro. It was so applied by the Supreme Court of Oklahoma in McLaughlin v. Yingling, 90 Okl. 159, 213 P. 552, and In re Street's Estate, 138 Okl. 115, 280 P. 413. See 48 C. J. 929; Kent's Commentaries on American Law, Vol. 4, p. 267. We find only one constitutional provision in Oklahoma on franchises. It is section 7 of article XVIII, entitled Municipal Corporations, and reads: "And no exclusive franchise shall ever be granted." Section 47 of article IX does, however, provide, that the Legislature may annul charters or franchises in such manner that no injustice shall be done to the incorporators. Also, section 10076 of the state statutes authorizes the purchase or condemnation of the rights of persons or corporations in toll bridges. The franchises here under consideration are not exclusive. The threatened action of the state officials as charged in the bill of complaint are threats to commit unlawful acts against rights and property of the complainants, and would be outside their powers as

such officials and unjustified under the rule announced in Cline v. Frink Dairy Co., 274 U. S. 445, 47 S. Ct. 681, 71 L. Ed. 1146, and by this court in a recent opinion in Boynton, Attorney General, v. Ellis, 57 F.(2d) 665. This suit is not against the state, as contended by said officers.

The decree of dismissal is reversed with direction to the court below to issue the injunction prayed for in the bill.