## ROADWAY EXPRESS, INC., v. MURRAY et al.

### No. 1306.

District Court, W. D. Oklahoma.
July 16, 1932.

Dailey & Keller and Wm. Madden Hill, all of Dallas, Tex., for plaintiff.

J. Berry King, Atty. Gen., F. M. Dudley and W. C. Lewis, Asst. Attys. Gen., for J. Berry King State Highway Commission of Oklahoma.

C. W. King, of Oklahoma City, Okl., for Oklahoma Tax Commission.

E. S. Ratliff and R. H. Ledbetter, both of Oklahoma City, Okl., for Corporation Commission of Oklahoma.

Before COTTERAL, Circuit Judge, and KENNAMER and VAUGHT, District Judges.

FRANKLIN E. KENNAMER, District Judge.

This action was instituted by Roadway Express, Inc., a corporation, organized under the laws of the state of Ohio, and having its principal office and place of business in the city of Akron, Ohio. The defendants are the individual members of the Corporation Commission of Oklahoma, the state highway commission of Oklahoma, and the Oklahoma tax commission, the Attorney General, the Governor, and the Lieutenant Governor.

This suit is an attack upon the motor vehicle statute of the state of Oklahoma, providing for the payment of a mileage tax upon vehicles operated for commercial purposes; the statute requiring the payment of license fees and for registering of motor vehicles, and the statute requiring a certificate for the operation of motor vehicles engaged in interstate commerce. The suit also complains of the manner in which the Oklahoma tax commission is fixing the fees on trucks by assessing a tax upon the maximum load of trucks rather than upon the manufacturers rated capacity.

The plaintiff is a corporation with a capitalization of $1,500. It does not own any trucks, but apparently contracts for the transportation of freight, mostly automobile tires, from Akron, Ohio, and has an arrangement with some thirty individual truck owners for the transportation of freight. The complainant applied to the corporation commission of the state of Oklahoma, for a permit to operate trucks as a contract carrier into and through the state of Oklahoma, and paid the statutory fee of $100, upon the fil-

ing of the application. The application was docketed and duly set for public hearing, at which hearing the complainant made a showing that it had complied with the police regulations of the state of Oklahoma for the operation of motor vehicles upon its highways; the hearing was closed, and complainant granted 30 days to file a brief with the commission. A question arose as to the responsibility of complainant, as well as whether complainant came within the purview of the laws of Oklahoma, being a bailee or lessee of motortrucks operated by it as class B carrier. Before the expiration of the time granted for the filing of briefs, this action was instituted, and no action has been taken by the corporation commission respecting it. The evidence further shows that the corporation commission of Oklahoma grants permission to operate motor vehicles for interstate common carrier service, in Oklahoma as a matter of course where the complainant shows compliance with the relevant police regulations. It is alleged that certain acts of the Oklahoma Legislature pertaining to the licensing and taxing of motor vehicles used for commercial purposes illegally burden interstate commerce; deprive complainant of its property without due process of law; and therefore are in conflict with the commerce clause of the Federal Constitution, as well as the Fourteenth Amendment to the Constitution.

Complaint is made against chapter 254, Session Laws of Oklahoma 1929, page 44, section 1 of which provides that any foreign motor vehicle bearing a local native tag or mark, showing that it has complied with the laws of the state or country from which it came, relating to the registration and licensing of vehicles, may use the roads and streets of Oklahoma without obtaining additional license for the same period of time that the laws of the state or country in which the vehicle is registered permit motor vehicles lawfully registered in Oklahoma to use the roads and streets of that state. It is provided that, in the event no such time is fixed by the laws of the other state, then such foreign motor vehicles may use the roads and streets of Oklahoma for not more than 60 days in any one calendar year without obtaining an Oklahoma license or registration.

Section 2 provides that all foreign motor vehicles used for commercial purposes within this state, for which license fees have been paid in a foreign state, shall pay license fees in Oklahoma as fixed by the laws of this state for motor vehicles of like make and kind. It is further provided that, where any foreign

state or country has a law requiring a license fee to be paid for motor vehicles used for commercial purposes through Oklahoma, the license fees to be paid the state of Oklahoma shall be the same as the fees fixed by the state or country where the motor vehicle is licensed or registered, but in no case, shall the fee to be paid to the state of Oklahoma be less than 50 per cent. of the amount fixed by law on motor vehicles of like kind and make in this state. It further provides that foreign motor vehicles carrying passengers or property for hire between fixed termini in Oklahoma, shall pay the same license and registration fee as is required of motor vehicles of like make and kind in Oklahoma, and requires applicants therefor to consent and agree, as a condition precedent, that the operation of such motor vehicle shall be subject to all laws of Oklahoma regulating motor vehicles engaged in the transportation of persons or property for hire.

Section 4 defines "foreign motor vehicles used for commercial purposes" as all motor vehicles, including motor busses, trucks, and trailers and livery vehicles from any foreign state, used for hire or for the transportation of persons or property within this state not used for business purposes, except private vehicles and business vehicles commonly used by salesmen and commercial travelers not carrying merchandise or passengers for hire.

Chapter 253, Session Laws of Oklahoma 1929, § 1, defines "motor vehicle" as an automobile, automobile truck, motorbus or any other self-propelled vehicle not operated or driven upon fixed rails or track. "Motor carrier" is defined as any person, firm, business trust or corporation, lessee or trustee or receiver operating any motor vehicle upon any public highway for the transportation of passengers or property for compensation. For the purposes of the act the motor carriers are divided into three classes.

Class A motor carriers include all motor carriers operating as common carriers of persons or property between fixed termini or over a regular route; class B motor carriers include all other motor carriers not operating as class A and C motor carriers; class C motor carriers include all carriers operating motor vehicles for the transportation of their own property, goods, or merchandise, who pay or collect from the consignee, purchaser, or recipient of such property for transporting or delivering the same, provided, however, "the provisions of this Act shall not apply to transportation of livestock and farm products in the raw state and trucks hauling road materials." The act further provides that the provisions of the act are applicable to commerce with foreign nations or commerce among the several states in so far as same may be permitted under the provisions of the Constitution of the United States and the acts of Congress.

Section 2 of the act grants the corporation commission of Oklahoma power and authority to regulate the motor carriers. Section 4 creates a fund to be known as the motor vehicle enforcement fund; section 5 requires class A and B carriers to obtain a permit by filing an application therefor and paying a fee of $100, and requiring a fee of $10 from class C applicants; section 9 provided for the payment of taxes for the maintenance and upkeep of public highways, and that part pertaining to the transportation of property is involved in this action.

It is provided that, in addition to the regular automobile license taxes imposed upon motor vehicles in Oklahoma, every class A motor carrier shall pay, for the maintenance and upkeep of the public highways and for the administration and enforcement of the provisions of the Motor Vehicle Act, upon each vehicle while engaged in the transportation of property, two-fifths cent per mile on the distance traveled; class B motor carriers shall pay in addition to the license tax for the maintenance and upkeep of the public highways, and administration and enforcement of the act, one-half cent per mile on the distance traveled, and provides the means of determining the mileage and the manner of computation of the taxes. It also provides that, in addition to the regular automobile license tax, motor carriers shall pay taxes, for the maintenance and upkeep of the highways and for the administration and enforcement of the Motor Vehicle Act of Oklahoma, certain definite sums upon motor vehicles, the same being fixed upon the carrying capacity of the vehicle and being increased in amount for greater carrying capacity.

It is further urged that, in addition to the taxes referred to in the statutes above set forth, there is levied by the state of Oklahoma an excise tax of 4 cents per gallon on each and every gallon of gasoline consumed in the state of Oklahoma; that the Oklahoma tax commission, which is charged with the duty of collecting all taxes, is improperly fixing the license fees for the operation of motortrucks upon the basis of the maximum load, in place of the manufacturer's rated capacity, and that there is no classification in the fixing of the taxes between the casual use

of the highways in interstate commerce and the daily and habitual use of said highways, and it is insisted that the demands are wholly unreasonable and impose a standard of taxation which is not related to the use of the highways in the state, and that the taxes imposed are unreasonable and excessive and constitute a burden upon interstate commerce; that the statute above referred to unduly discriminates against class B operators as a class, and in favor of the hauling of live stock and farm products and road materials, and in favor of class A operators, without proper basis or just definitions for such classifications. The greater mileage tax for class B operators, over class A operators, it is charged, constitutes a discrimination which is unreasonable.

It is further alleged, and the evidence sustains the charge, that, in addition to the tax hereinbefore set out, upon the entrance into the state of Oklahoma, a truck operated by the complainant is required to pay the sum of $5 to the state traffic enforcement officers of the Oklahoma state highway commission, who issue a special or field permit which purports to give trucks permission to cross the state of Oklahoma without molestation, but that the permit is disregarded by other officers of the state, and another $5 fee is exacted.

 The defendants have answered, and justify the taxes and fees as a valid charge within the power of the state, setting up in detail the cost of constructing and maintaining highways of the state of Oklahoma; the sums expended by the highway commission for the enforcement of the motor vehicle traffic laws; the sums expended by the counties for the maintenance and construction of highways; that this action is against the state of Oklahoma in contravention of the Eleventh Amendment to the Federal Constitution, the state not having consented to the institution of the action, and that plaintiff has an adequate remedy at law for the refund of all taxes illegally paid by it.

The first of these special defenses rests on the ground that the plaintiff has a remedy by mandamus while the moneys paid were temporarily held by the state treasurer and were subject to refund before they were converted into the state treasury, but thereafter the claim for a refund became a demand against the state, relying upon sections 8608 to 8614, Comp. Okl. Stat. 1921, and citing as authorities Red Star Line v. Baughman, 153 Md. 607, 139 A. 291, and Brunson v. Com'rs of Land Office, 145 Okl. 219, 292 P. 562. But

no refund was authorized of mileage taxes and permit fees, as they must be immediately deposited in the treasury. Sections 5 and 9, c. 253, Sess. Laws 1929. Without reviewing the other various enactments, it is doubtless true the collections involved have been distributed to the highway authorities. See sections 5 and 9, c. 253, Sess. Laws 1929, and section 2, c. 167, Sess. Laws 1925. Besides, section 8614, supra, affords merely a summary remedy for erroneous transactions, and not such controversies as are here involved. The Brunson Case pertains to refunds of moneys to which the state could have no title. A suit for a refund is one at law. The payments made by plaintiff were not voluntary, but to avoid revocation of its permit. Section 9, c. 253, Sess. Laws 1929. A state officer cannot defend under state authority, by virtue of unconstitutional enactments; and the bill requires an examination of the case on its merits. Hopkins v. Clemson Agricultural College, 221 U. S. 636, 31 S. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243; Old Colony Trust Co. v. Seattle, 271 U. S. 426, 46 S. Ct. 552, 70 L. Ed. 1019; Terrace v. Thompson, 263 U. S. 214, 44 S. Ct. 15, 68 L. Ed. 255; Hamill v. Hawks (C. C. A.) 58 F.(2d) 41. Equity does not "do justice by halves." Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445. The remedy to obtain a refund is therefore dependent on the equity jurisdiction of this court in other respects.

The remedy here sought in equity is well founded. It is true the mere illegality of a tax does not authorize an injunction against its enforcement. There must be an absence of a plain, adequate, and complete legal remedy. Title 28, U. S. Code, § 384 (28 USCA § 384); Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447; Stratton v. St. Louis S. W. Ry. Co., 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465. But the plaintiff had no such remedy. The monthly payment of mileage and other annual taxes required by section 9, c. 253, Sess. Laws 1929, would necessitate a multiplicity of suits to test the legality of those taxes between the same parties and involving the same issues. Matthews v. Rodgers, supra. Furthermore, section 9 of chapter 253, Sess. Laws 1929, declares all monthly taxes assessed become a first lien upon all the property of the carriers, and authorizes an advertisement and sale of the same for nonpayment of the taxes. Both are grounds of equity jurisdiction. The provisions of section 7, subd. B, art. 1, c. 107, Sess. Laws 1915, for payment of taxes and

suit therefor are insufficient to exclude an equitable remedy in the federal courts. Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445.

■ The defense urged that this is a suit against the state of Oklahoma in violation of the Eleventh Amendment to the Federal Constitution is untenable. Champlin Refining Company v. Corporation Commission, 52 S. Ct. 559, 76 L. Ed. 1062, decided May 16, 1932; Continental Baking Company v. Woodring, 52 S. Ct. 595, 76 L. Ed. 1155, decided May 23, 1932; Sproles et al. v. Binford et al., 52 S. Ct. 581, 76 L. Ed. 1167, decided May 23, 1932. We are bound to hold the plaintiff is entitled to pursue in equity the remedy of contesting the validity of the taxes paid and unpaid in question. This brings us to the merits of the complaint against the taxes, as alleged in the amended bill.

The evidence discloses that the Oklahoma state highway system consists of state highways constructed and maintained by the state government; county highways constructed and maintained by the various counties of the state; township highways maintained by the various townships of the state. The cost of construction and maintenance of the various classes, kind, and character of highways in Oklahoma is as follows: Construction of concrete pavement, $20,000 per mile; macadamized pavement, $8,000 per mile; brick pavement, $28,000 per mile; and asphalt pavement, $28,000 per mile.

The cost of placing grades and draining a highway for receiving pavement is approximately $8,000 per mile. The cost of maintenance of paved highway is $445 per mile per year. The cost of graveling and oiling highways is approximately $3,000 per mile and of maintaining graveled highways $681 per mile per year.

For the fiscal year, commencing July 1, 1930, and ending June 30, 1931, the highway commission of Oklahoma expended, for enforcement of highway motor vehicle traffic laws, highway rules and regulations and inspections authorized by law, in excess of $272,000; for construction, extension, maintenance, and upkeep of state highways, in excess of $18,750,000. During the same period, the several counties of Oklahoma expended for county highway purposes in excess of $11,000,000. Of this amount approximately $3,170,000 was met by ad valorem taxes, and during the same period the several townships of Oklahoma expended approximately $3,333,747 for township highway purposes.

During the calendar year 1931, there was collected as permit fees and motor carrier taxes approximately $173,000, which was distributed to the highway construction and maintenance fund. There was collected for motor vehicle registration taxes the amount of $5,653,160, which was distributed, to the highway collection fund, $12,468; to general revenue $4,769; to the highway construction and maintenance fund $2,254,368; and to the several counties of Oklahoma, for highway purposes, $3,381,553. There was collected as gasoline excise tax the amount of $9,755,813, which was distributed as follows: Refunds, $9,779; gasoline excise tax collection funds, $121,041; to the various counties of Oklahoma, for highway purposes, $2,404,299; and to the state highway construction and maintenance fund, $7,212,899.

It was further established that heavily loaded trucks were more destructive of the highways than lighter trucks, and that the regulations of the highway commission were designed for the purpose of preventing injury to the highway system of the state of Oklahoma, by fixing dimensions, etc., of motor vehicles.

The evidence established that the semi-trailer attachment and additional axles increase the carrying capacity of a truck as high as three times the rated factory carrying capacity, and that such excessive weights are very burdensome to the highway system, and the additional taxes imposed upon trucks by reason of a maximum load being the basis rather than the rated capacity are in direct proportion to the burden the heavily loaded truck bore to the highway system. It was disclosed by the evidence that the acts herein complained of pertain to and affect all motor vehicles and motor carriers, and are not directed specifically against those engaged in interstate commerce, and there is no showing that there has been an enforcement of the statutes with respect to plaintiff different from any other motor carrier using the highways of the state of Oklahoma.

■■ A state may demand of one carrying on an interstate business only fair compensation for what it gives. Such a charge is valid only if compensatory, and it must necessarily be predicated upon the use made, or to be made, of the highways of the state. Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199. It is well established that any action by a state directly or through its municipalities, exercising such control over interstate commerce as to directly interfere with its operation, must be such as does not

impose unreasonable burdens upon that commerce, nor subject it to unreasonable demands. The state has the right to impose reasonable regulations upon motortrucks engaged in interstate commerce which use the highways, but such regulations must be related to the manner in which the highways are to be used for the protection of the public, and any one engaged in interstate commerce must enter a state subject to all reasonable police regulations existing in that state. A railroad traversing the city streets may be required to place safety gates upon the highway, or to ring a bell or sound a whistle on approaching crossings. The engineer may be required to demonstrate his skill and ability to operate a railway locomotive, without placing undue burdens upon interstate commerce. Smith v. Alabama, 124 U. S. 465, 8 S. Ct. 564, 31 L. Ed. 508.

In the instant case, the plaintiff applied to the corporation commission for a permit to operate trucks into and through the state of Oklahoma, as an interstate motor carrier, under the classification of a B operator. Before the application was passed upon this action was instituted, and plaintiff attacked the right of the corporation commission of the state of Oklahoma to compel it to make a showing of its financial responsibility and to disclose whether it is a broker of freight contracts or a motor carrier. There is nothing to indicate that the corporation commission of the state of Oklahoma will deny the plaintiff a permit to operate motortrucks in interstate commerce into and through Oklahoma upon being furnished with such information. However, we cannot say that the requirement of the corporation commission that those desiring to engage as class B operators make a showing of their financial responsibility, as well as that they are motor carriers and not mere brokers of freight contracts, is unreasonable. Such a requirement is made of those engaged in intrastate and interstate commerce. It is vital to the proper use of the highways that those engaged in conducting a business upon the highways have financial responsibility. If there is a want of financial stability, it is probable that there will be a failure to comply with the regulations requiring safety devices; there will be inability to pay the license fees and taxes and to maintain and carry insurance for the protection of others employing the highways. A broker of freight contracts may be without financial responsibility, and it is indeed reasonable that all facts connected with each applicant be fully disclosed before any permits are granted. In our opinion, such a requirement of the corporation commission is reasonable, and does not constitute an interference with interstate commerce, and neither does it deprive complainants of their property without due process of law. There is no showing that the corporation commission has acted arbitrarily, or is exacting more of plaintiff than of other applicants seeking permits to engage in a business requiring the use of the public highways.

It is urged by the plaintiff that a discrimination exists against class B carriers and in favor of class C motor carriers because of the provision contained, eliminating the application of the act to transportation of live stock and farm products in the raw state and trucks hauling road materials. It is urged that class C carriers are permitted to haul road materials, live stock, and farm products without being subjected to the requirements of the act, and without being compelled to pay the mileage tax to which plaintiff and other class B carriers are subjected. The Oklahoma Supreme Court has construed the statute above quoted, and that construction is binding upon this court. In Collins-Dietz-Morris Co. v. State Corporation Commission, 154 Okl. 121, 7 P. (2d) 123, 130, it was said: "The act in question, by its terms, affects three classes of motor carriers, therein designated as class 'A,' class 'B,' and 'C' motor carriers. The language of the act is such as to show a legislative intent of severability with reference to the three classes. The provisions of the act with reference to each of the three classes are severable, * * *" and, in considering the provision of the act concerning the transportation of live stock and farm products in the raw state and trucks hauling road material, the court stated: "That provision applies only to carriers operated by the owners thereof for the transportation of their own property, goods or merchandise, and does not apply to carriers or the owners thereof as to the transportation of live stock, farm products in the raw state, and trucks hauling road material, where the live stock, farm products, or road material are not the property of the owner of the carrier." And: "'Road material,' as used in the act, refers to materials intended to be used for the construction, maintenance, and repair of public highways, and the language used does not apply to materials that could be used for the construction, maintenance, or repair of public highways, but which, in fact, are intended to be used for other purposes."

The construction placed upon the act by the Oklahoma Supreme Court renders the

statute reasonable in its exemption, and this construction eliminates the objections that might be urged against the act under the authority of Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264. The act was undoubtedly framed to meet local conditions existing with respect to farm products, live stock, and the building of roads, and the Oklahoma Legislature did not attempt to compel private carriers to become public carriers. The act does not place the two classes of carriers upon the same footing, and does not subject them to the same obligations. The act is reasonable in its classification and exemptions, and does not discriminate against the plaintiff or class B carriers. Continental Baking Company et al. v. Woodring, supra.

It is contended that the statute above quoted discriminates in favor of class A carriers and against class B operators, in that a mileage tax of one-half cent per mile is required of class B carriers, while only two-fifths cent per mile on the distance traveled is required of class A carriers. A mileage tax is not a privilege tax, but one bearing directly upon the use of the highways made by the carrier. It has been sustained as reasonable and valid by the United States Supreme Court in Continental Baking Company et al. v. Woodring, supra. It is to be observed that class A carriers are those operating as common carriers between fixed termini or over a regular route, while class B carriers include all other motor carriers not operating as class A and class C carriers. It is apparent that those operating between fixed termini, or over a regular route, are less difficult to inspect and supervise, and collection of fees and taxes is easier than the supervision and collection of taxes from the periodic motor carrier. Each carrier may make the same use of the highways, but the expense of supervision, inspection, and collection of fees is much more difficult with class B carriers than class A operators, and the difference in the mileage tax is not disproportionate to the difference in the two classes of carriers. In our opinion, the difference in the rate charged as mileage tax is justified because of the difference in the two carriers and their operations, and is reasonable in light of the added burdens to the enforcement of the motor vehicle laws. Furthermore the mileage tax is required of intrastate as well as interstate carriers, and that there is no discrimination against either carrier.

Objection is raised to the statutes heretofore referred to for their failure to differentiate between the casual use of the highways and the habitual use. This objection is without merit. See Carley & Hamilton v. Snook, 281 U. S. 66, 50 S. Ct. 204, 74 L. Ed. 704, 68 A. L. R. 194.

The plaintiff complains that the Oklahoma tax commission is exceeding its authority in fixing the license fees for trucks operated in interstate commerce upon the maximum load of the truck rather than upon the factory rated capacity. It is contended that the method employed imposes a burden upon interstate commerce, in that the right to operate the truck is taxed; that such a method of taxation is a privilege tax, and is not related to the use of the highways. It says that the maximum load may be brought into Oklahoma only once a year, and that plaintiff is taxed during the entire year upon that basis. From the evidence presented, it clearly appears that the actual load and weight of the loaded truck has a direct bearing upon the use to which the highway is subjected. The rated capacity of a truck cannot determine the injury the truck may cause the highway, but the manner in which the truck is loaded and operated directly bears upon the use of the highway and the manner in which the highway is affected by such truck. It may as well be urged that the truck will be loaded to its factory rated capacity only once a year, and during the remainder of the term may only have one-half of its rated capacity as its load, and that it would be unfair to fix the license fee upon the basis of the factory rated capacity. The fact that the truck will be loaded heavily a few times a year is no defense to the authority of the state to predicate its fees upon the relation the loaded truck bears to the use of the highway. Certainly a truck heavily loaded is more destructive to the highways than one less heavily loaded, and the loading of the truck and its weight are proper standards for the determination of the tax with respect to the cost of maintaining a highway used by such trucks.

A state may impose upon vehicles using the highways in interstate commerce, either exclusively or in conjunction with interstate commerce, requirements for insuring the public safety and convenience, and in pursuance of such practice may impose such license fees or taxes as will reasonably defray the expense of administering the regulations and pay a fair contributive share of the cost of constructing and maintaining the public highways and facilities furnished by a state. Hendrick v. Maryland, 235 U. S. 610, 35 S.

Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199.

█ Certainly a state may impose a license upon trucks operating over and upon its highways, whether engaged in interstate or intrastate commerce. The evidence shows that the license tax exacted of all operators of motor vehicles is apportioned to the construction, maintenance, and upkeep of the public highways, that it is reasonable, and it may therefore be laid on motor vehicles engaged in interstate transportation for hire.

█ Plaintiff contends that the reciprocity provisions contained in the motor vehicle laws of Oklahoma are discriminatory and unjust. We cannot agree with this contention. The Legislature, in enacting the motor vehicle laws, as above quoted, realized that large trucks used in hauling freight are likely to do great damage to the surface of the highways over which they travel, and determined to allow such trucks no free use of the highways. Reciprocal provisions in motor vehicle statutes have had the consideration of courts, and such provisions have been sustained as valid. We cannot say that the Oklahoma statute is unreasonable and that the reciprocal provisions constitute a burden upon interstate commerce as a discrimination against plaintiff, a resident of the state of Ohio. See Hendrick v. Maryland, supra; Kane v. New Jersey, supra; Storaasli v. Minnesota, 283 U. S. 57, 51 S. Ct. 354, 75 L. Ed. 839. The mere fact that a foreign truck is not or cannot be brought within the class benefited by the reciprocal provisions does not create a discrimination against it. Plaintiff charges that the act fails to create a situs for foreign vehicles using the highways of the state, and that the tax is invalid because the trucks are arbitrarily domiciled in a particular county for the purpose of taxation. There is no merit in this contention. Storaasli v. Minnesota, 283 U. S. 57, 51 S. Ct. 354, 75 L. Ed. 839.

█ We cannot find any justification for the payment of the special permit tax. The fees paid under the statutes above set forth should compensate officers intrusted with the enforcement of the highway laws, and plaintiff should not be required to pay a $5 fee to the state traffic enforcement officers. In our opinion, the exaction of such a fee is not warranted, and the highway commission should not be permitted to collect such a fee, as no statute has been called to our attention authorizing such fee.

The United States Supreme Court has passed upon statutes similar in many respects to the Oklahoma statute, and has sustained the statutes of Texas and Kansas as valid. Continental Baking Company et al. v. Woodring, supra; Sproles v. Binford, supra.

In our opinion, the taxes imposed by the State of Oklahoma are reasonable, and bear directly upon the use made of the highways, and that the taxes in their aggregate do not constitute a burden upon interstate commerce, and neither do they deprive plaintiff of its property without due process of law.

We therefore conclude that the amended bill of complaint should be dismissed, with costs, as we assume the state authorities will not insist upon the payment of the special traffic enforcement officer's fee.