RESH, INC., a corporation, and E. R. Reece,
Intervenor, Appellees,

v.

OKLAHOMA ELECTRIC COOPERATIVE,
INC., Appellant.

No. 44739.

Supreme Court of Oklahoma.

July 3, 1973.

Rehearing Denied Dec. 26, 1973.

Fielding D. Haas, Benedum, Haas & Benedum, Normal, for E. R. Reece (intervenor), appellee.

Velmer J. Dimery, Norman, for Resh, Inc., appellee.

Tom A. Lucas, Lucas & Fields, Maurice H. Merrill, Norman, J. A. Rinehart, Rinehart, Rinehart & Rinehart, El Reno, for appellant.

Leon G. Belote, City Atty., McAlester, John Arney, City Atty., Weatherford, Johnny M. Perry, Atty. for City of Hobart and Town of Sentinel, Hobart, Ed R. LeForce, City Atty., Idabel, George W. Martin, Jr., City Atty., Mountain View, Andrew Wilcoxen, City Atty., Muskogee, Robert M. Murphy, Stillwater, John F. Hudson, Stigler, W. L. Barber, Lindsay, Carl H. Smith, Jr., City Atty., Carnegie, Charles W. Jennings, Atty. for Towns of Cache and Board, Lawton, Waldo Bales, City Atty., Tulsa, James Bounds, City Atty., Hugo, Roy H. Semtner, Municipal Counsellor, Oklahoma City, Ronald R. Hadwiger, Cherokee, Ricardo J. Rodgers, Duncan, Peyton E. Brown, Blackwell, William M. Fancher, Hollis, Leslie Pain, Anadarko, Joe Stamper, Antlers, Earl Youree, Wagoner, Norman Shutler, Kingfisher, Bob E. Bennett, Ada, Paul Dean Spears, Durant, Richard K. Harris, Bartlesville, Almon E. Henson, Shawnee, Jack L. Rorschach, Vinita, Richard F. Burt, Cleveland, H. C. Ivester, Sayre, Fred King, Guymon, Haskell B. Pugh, Anadarko, K. D. Bailey, Okmulgee, Gene Stipe, McAlester, Jack M. Annis, Woodward, Charles A. Milor, Marietta, Howard M. McBee, Frederick, Clyde J. Watts, Oklahoma City, attorneys amici curiae.

LAVENDER, Justice:

This is an appeal by defendant, Oklahoma Electric Cooperative, Inc., a corporation, from an adverse judgment in the District Court of Cleveland County, Oklahoma, in favor of Resh Incorporated, a corporation, and E. R. Reece, Intervenor. Parties will be referred to as they appeared below.

The trial judge by memoranda succinctly stated the facts, which will be related in part:

"Plaintiff brought this action as owner of land, seeking to enjoin defendant from constructing an electric distribution line along the west side of it, alleging that a portion of the construction was off the roadway easement and on plaintiff's land, and that it had no right to expand its services.

"At hearing held, it was shown by defendant that it was servicing an area that it was in before such was annexed into the City of Norman. That it was now serving about ten times as many customers as it did at the time of annexation, and that the present load required the installation of new circuits, even though it had already had one just across the road and parallel to the one they were constructing on plaintiff. It was further shown that defendant had made no effort to obtain easement from plaintiff, but plaintiff's evidence made it clear that such would have done no good, as they were dealing with another utility company for underground service. Plaintiff urged that it had no adequate remedy at law, and that defendant should be enjoined from constructing the line.

"* * *, the undisputed evidence showed the necessity for expansion of defendant's facilities * * *.

"* * * The Oklahoma Legislature many years ago allegedly gave utilities the right to use highway easements for their utility purposes."

Pursuant to this referenced legislation, the Cooperative, to whose existence defendant succeeded, obtained consent of the county to do things necessary to transmit electrical energy within the county.

The trial court found that plaintiff had no adequate remedy at law and could seek an injunction.

Following hearing on the matter and while the court had it under advisement, E. R. Reece, taxpayer and resident of the City of Norman, was permitted to intervene with the claim that defendant had no right to serve new customers within the city limits of Norman without a franchise, that defendant had none, and that defendant's use of the streets of the municipality for public utility purposes was a denial to intervenor of his right to vote on the granting of a franchise as provided for in Article 18, Section 5(a) of the Constitution of the State of Oklahoma.

Thereafter, the trial court rendered judgment in favor of plaintiff and permanently barred and enjoined defendant from installing any lines, poles or other equipment over and across the public road abutting on plaintiff's property, and ordered defendant to remove any such equipment already installed on it.

Judgment was also given to intervenor, and defendant was permanently barred and enjoined from installing any lines, poles or other equipment over and across the public road abutting on intervenor's property.

The trial court also decreed that to the extent that Title 18 O.S. 437.2(k), or any other provision of the Rural Electric Cooperative Act of 1939, as amended by the Laws of 1961, would purport to grant to defendant a state franchise, or to authorize said defendant to expand its services and operations within the boundaries of the City of Norman after annexation over and beyond those existing as of the date of any such annexation, the same was void and invalid as being violative of provisions of Article 18, Section 5(a) and (b) of the Constitution of the State of Oklahoma.

The trial court also ordered that defendant's supersedeas bond of $6,000.00, theretofore posted, be considered a supersedeas bond for purposes of appeal of the judgment.

Execution of the judgment was stayed pending appeal.

The factual manner of defendant's operation in the annexed area subsequent to its annexation, and the basis therefor as understood by it, comes more distinctly into focus from the testimony of its general manager:

"Q. Now, Mr. Rudolph, did you seek any permission from the City of Norman to put up the line in question here today?

"A. No, sir, we did not.

     *     *     *     *     *     *

"Q. Now, Mr. Rudolph, how many members do you have in that Northwest Quarter, if you know?

"A. I think there is only one connection, at the present time, in the Northwest Quarter.

"Q. Is this new power line necessary, convient (sic) or appropriate for that one member, presently existing?

"A. No, I don't believe so.

     *     *     *     *     *     *

"Q. Well, why, in your opinion, is this power line in question necessary, convient (sic), or appropriate?

"A. * * * But this is basically the result of long range planning, as a co-operative, in an effort to provide adequate dependable electric service to the community and the general public, for which it serves. * * * Whereas (sic) the sys-

tem on the west side of Norman grew, . . . we continued to study it. . . . so that the west side of Norman to be adequately served . . . , must be, by necessity, have additional source of power in that area. And we normally refer to that as a sub-station . . .

*    *    *    *    *    *

"Q. Have new members been added since 1961 in this annexed area to this power line in question?

"A. Oh, yes, yes.

"Q. Would you say many as just a few or - - -

"A. I would say many.

"Q. Now, these areas that were added, were they substitute members or were they altogether new members?

"A. Well, a little bit of both. In other words, a rent house where people move in and out would constitute basically the same load, but a load such as Clark's Department Store—Clark's Discount Store or the Pontiac agency, or the Buick agency, our own warehouse facilities, and many more—apartment houses and so forth, have been added to this area out there, and must be accomodated—these must be accomodated some way.

*    *    *    *    *    *

"Q. How many members would you estimate, or if you know, did you have in existance (sic) in 1961, in that area?

"A. I wouldn't have any way of knowing what that would be nine years ago.

"Q. Would you estimate that you have something like ten times as many members now as you did in 1961?

*    *    *    *    *    *

"A. Well, I would guess, probably, that would be a safe figure. It could be considerably more than that, or somewhat less, but I would say that was an average figure.

"Q. So, you have extended power to new members without question, since this area was incorporated?

"A. Oh, yes.

*    *    *    *    *    *

"A. * * * We have been guided by the 1961 Legislation, and that is what our interpretation has been. (An obvious reference to 18 O.S. 1961, §§ 437.2(k) and 437.28, infra)

*    *    *    *    *    *

"Q. Mr. Rudolph, is this line in question necessary to serve present members within the next six to eight months, in the foreseeable future?

"A. Yes, sir.

"Q. Why?

"A. We experience a peak demand load on the system during July and August, and again in December or January, and this is designed to be in operation by December One, hopefully, that is far enough ahead of the demand.

"Q. Have you had the peak problem on the existing power line with the members on there now?

"A. Yes, sir. We have installed temporarily, voltage regulators on the system just north of Robinson Street, on that very circuit, just to improve the voltage, because of that situation.

*    *    *    *    *    *

"Q. Does this line have anything to do with the proposed sub-power station—or sub-station?

"A. Yes, sir. It has all to do with that proposed sub-station.

*    *    *    *    *    *

"Q. And you're telling me that this sub-power station is necessary right now to handle this?

"A. Well, not to handle the maximum load on it. Naturally, it would grow. You don't install just the

capacity needs for next week . . . These plans are designed for ten years in advance.

\* \* \* \* \* \*

"Q. Now, has the City of Norman approved and given permission to place the sub-station there?

"A. Through proper application to the City, they have approved the location of the sub-site."

The question is whether defendant, with no franchise from the municipality, had valid consent by Resolution from the county pursuant to legislative act that would provide it with a continued right to operate in an area annexed by the municipality subsequent to the Resolution, and, if so, the extent of that operation and the limits of that right, if any.

Article 18, § 5(a) of the Oklahoma Constitution provides:

"No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon thirty days' notice; and no franchise shall be granted, extended, or renewed for a longer term than twenty-five years."

Article 18, § 5(b) of the Oklahoma Constitution provides for petition and decision by the electors of a municipality whether a franchise should be granted, extended, or renewed.

In regard to areas outside of municipalities, the Legislature may provide for franchises, licenses, permits, and the like, pursuant to Oklahoma Constitutional provisions (Article 5, Sec. 36) that provide:

"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

Session Laws of 1917, Ch. 230, p. 429, § 1; 69 O.S.1961, § 4, subsequently amended and codified to 69 O.S.1971, § 1401, show that the Legislature initially provided for utilization of public roads for purposes as are here concerned as follows:

"Any person, firm or corporation organized under the laws of this State, or qualified to do business in this State to furnish light, heat or power by electricity, \* \* \*, shall have the right to use the public roads and highways in this State for the purpose of erecting poles or posts along or across the same, and sustain their wires and fixtures thereon, or to lay under the surface of said roads or highways pipes or conduits for the purpose of selling electricity \* \* \* for light, heat or power, upon obtaining the consent of the Board of County Commissioners of the county or counties in which the public highways are proposed to be used for such purpose, such consent to be evidenced by a resolution by such board or boards entered of record, and such resolution shall specifically describe the particular highway or highways to be used and the terms and conditions under which the same are to be used, but said poles and wires and fixtures shall be erected, placed, adjusted or laid and maintained under such rules and regulations as shall be prescribed by the Board of County Commissioners of the county in which said roads or highways are located. Provided, that said board may fix and collect an annual franchise tax, which said tax, when collected, shall be available for the improvement or maintenance of the particular highway covered by such franchise. Provided, further, that nothing herein contained shall be construed to grant the right to use the streets or other public places of any city or incorporated town of this State without the consent of such city or incorpo-

rated town as required by Article 18 of the Constitution of this State; and provided further, that such poles, wires, conduits and equipment shall be erected, placed, adjusted, laid, constructed and maintained so as to not incommode or endanger the public in the use of its roads, highways and thoroughfares. The failure of such corporation to construct or maintain its poles, wires, conduits or equipment upon or under such public highway in complete accord with the rules and regulations prescribed by the Board of County Commissioners of the county in which said public highway is located, shall ipso facto forfeit the rights of such corporation to the use of such public highway or highways; and such corporation may thereupon be ousted by proper legal proceedings in a court of competent jurisdiction from the use and occupancy of such public highway or highways. And, provided further, that nothing herein contained shall be construed to abridge or affect the rights of abutting property owners along the highway."

These provisions were codified with some changes and omissions into 69 O.S.1971, § 1401 which reads in part:

"(b) The use of the public roads and highways by such public utilities shall be for the purpose of erecting poles and posts, attaching equipment, wires and fixtures thereto and laying pipes and conduits under the surface thereof. Such poles, wires, fixtures, pipes and conduits shall be erected, placed, adjusted, or laid and maintained only after obtaining the consent of, and under such rules and regulations as shall be prescribed by, the Commission as to the State Highway System, and the Boards of County Commissioners of the various counties as to roads and highways under their jurisdiction. Provided, that nothing herein shall be construed to grant the right to use the streets or other places of any municipality of this State without the consent of such municipality. Provided further, that nothing herein shall

be construed to limit any rights granted by other provisions of law. * * *."

It may be noted that the continued requirement of consent from the Board of County Commissioners does not now mention the need of a specific description of the highways to be used, as was previously the case. However, the proviso that the act does not grant the use of streets and other places without consent of the municipality is carried forward into section 1401. Further, any rights granted by other provisions of law are specifically saved. Nothing is said directly about the rights of abutting property owners as previously.

Section 7, Article 18 of the State Constitution provides:

"No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the State, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment.

Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted."

Appendix A of the brief of defendant reflects that on 7 June 1937 the Board of County Commissioners of Cleveland County, Oklahoma, authorized the Inter County Electric Cooperative to which defendant is successor, subject to such reasonable rules and regulations as the Board might prescribe,

"to construct, maintain, and operate a (sic) high tension lines, various high tension primary lines and various low tension service lines for the transmission of electrical energy in, along, under, and across the section lines, public highways, roads and streams in said county, and to erect poles or posts along or across the same to sustain its wires and fixtures thereon."

The Resolution shows that it was in response to the Cooperative's prayer for permission and authority to erect poles, etc. The word "franchise" is not used in the

Resolution. Plaintiff and intervenor recognize in an Answer Brief as Appellees that there was a county license granted to defendant.

The term "license" as used by plaintiffs is in accord with language of this court in Town of Gans v. Cookson Hills Electric Cooperative (1955), Okl., 288 P.2d 707, 711 wherein it was concluded that a Resolution by a Board of County Commissioners authorizing certain action by the Cooperative in an unincorporated town was sufficient to grant the Cooperative at least a permissive license to use the town's streets and alleys. Defendant emphasizes that the term "at least" may mean something more than a permissive license.

The defendant urges that it acquired a franchise and vested property rights by the Resolution action of the Board of County Commissioners, and cites the ruling by the Supreme Court of the United States in Russell v. Sebastian, 233 U.S. 195, 34 S.Ct. 517, 58 L.Ed. 912. In that case there was a "blanket" franchise by the California constitution of that time which ripened into a contract upon action thereon by a gas company, the company thereby acquiring rights to use streets of the City of Los Angeles for installation of its gas mains.

The defendant acknowledges that there was no franchise here arising from the State through the authorizing statute, but says that a franchise was given by Resolution of the Board of County Commissioners based upon the "power" to do so found in the statute. Defendant's position is that, as in Russell v. Sebastian, its rights vested under contract are property rights not to be impaired.

There is no disagreement among the parties to the fact that defendant may retain and use its installations in place prior to the annexation. We so held in Caddo Electric Cooperative v. State (1964), Okl., 391 P.2d 234. It is of no assistance to denominate the Resolution action as either a franchise, license, permit, or authorization. In this regard, it may be noted that in the Russell v. Sebastian case, supra, the authorization was from the State and referred to by the U. S. Supreme Court as a grant. The Resolution in the instant case uses the word "authorized" as a predicate for indicating what defendant may do. But the statute provides for the county to collect a franchise tax for improvement of the particular highway covered by such franchise. We are not bound by any of these terms. By whatever name, when defendant acted pursuant to the authority given, a contract in the nature of a franchise came into being, subject however, to power of the Legislature to change, annul, or revoke it as provided in Article 9, § 47 of the Oklahoma Constitution pertaining to franchises, and possibly subject further to the right of the citizens of the municipality involved to terminate the Cooperative's right to continue using the streets, alleys, or other public grounds or ways of the municipality in a franchise election as provided by Article 18, §§ 5(a) and 5(b), Oklahoma Constitution. This last question we do not herein decide.

It is noted that the Resolution is broader in scope than the authorizing statute terms envisioned, the statute providing that the consent of the Board of County Commissioners would be by Resolution that specifically described the particular highways to be used by the Cooperative. However, the Resolution has no specific description. It provides that the Cooperative was authorized to maintain and operate a high tension lines (sic) and various low tension service lines in, along, under, and across the section lines, public highways, roads and streams in the county, and to erect poles or posts along or across the same to sustain its wires and fixtures thereon. Nevertheless, the statute and Resolution are not in conflict, for a fair construction of the statute is that the provision for Resolution description of the particular highways to be used was for protection of the county which might then levy a tax on the operation which, when collected, would be available for improvement or maintenance of the particular highway described in the Resolution. The county did not choose to

particularize the highways used and has levied no "franchise" tax as such. Instead, the record reflects, the Cooperative pays a two percent gross receipts tax to the City of Norman in lieu of a franchise tax. The current version of the law makes no provision for particularization of the highways.

Two years after the Resolution concerned here, the Legislature enacted the Rural Electric Cooperative Act (Oklahoma Session Laws, 1939 Ch. 46, § 3(k)) which provided:

"Section 3. A cooperative shall have the power:

\* \* \* \* \* \*

"(k) To construct, maintain and operate electric transmission and distribution lines along, upon, under and across all public thoroughfares, including without limitation, all roads, highways, streets, alleys and bridges, and upon, under and across all publicly owned lands, subject, however, to the requirements in respect of the use of such thoroughfares and lands that are imposed by the respective authorities having jurisdiction thereof upon corporations constructing or operating electric transmission and distribution lines and systems."

These provisions were carried forward without change into an amended statute of 1949. (Oklahoma Session Laws, 1949, Ch. 10, § 1, subsection 437.2(k)) pertaining to Electric Cooperatives. The sweeping language therein referring to use of highways without limitation, subject to requirements of authorities having jurisdiction, is consistent with the thought expressed, supra, that there was no requirement in the earlier act authorizing the county Resolution that the Resolution should specifically describe the particular highway to be used by the Cooperative.

In 1961, the provisions concerning Electric Cooperatives were expanded by a Legislative Act that had no emergency clause and no specified effective date. The Act was approved June 6, 1961, with language added onto subsection (k) that provided in part:

"Section 437.2(k) \* \* \* provided that in case an area has been or shall be included, as a result of incorporation, annexation, population growth, or otherwise, within the boundaries of a city, town, or village, a cooperative which was furnishing electric energy, or was constructing or operating electric facilities, in such area, prior to such inclusion, shall be entitled to construct, maintain, and operate electric transmission and distribution lines and related facilities along, upon, under and across all existing and future public thoroughfares, and to continue and extend the furnishing of electric energy or the construction and operation of electric facilities in such area without obtaining the consent, franchise, license, permit or other authority of such city, town or village, \* \* \*."

(18 O.S.1961, § 437.2(k)).

The definition of "rural area" was also expanded beyond the previous definition that had provided that it was any area not included within the boundaries of any incorporated or unincorporated city, town or village, having a population of fifteen hundred persons. As expanded it read, and currently reads:

"Section 437.28 \* \* \*

"(a) 'Rural Area' means any area not included within the boundaries of any incorporated or unincorporated city, town or village, having a population in excess of fifteen hundred (1500) persons, and any area included within the boundaries of any such city, town, or village as a result of incorporation, annexation, population growth, or otherwise, in which area a cooperative commenced or commences the construction or operation of electric facilities or the furnishing of electric energy prior to such incorporation, annexation, or population growth."

Because the Rural Electric Cooperative Act approved June 6, 1961, contained no specified effective date (despite the Title

to the contrary) and no emergency clause, it became effective ninety days after adjournment of the session at which it was passed (Article 5, § 58, Oklahoma Constitution). The Legislature adjourned sine die on the 28th day of July, 1961 (Certificate of Secretary of State, Session Laws of Oklahoma, 1961). The transcript of hearing of the cause of action in the trial court indicates that the annexation occurred in 1961, and an Order Nunc Pro Tunc of the trial court states that the annexation occurred on the 21st day of October, 1961. The amendments expanding the Act were effective on 26 October 1961. The trial court has found that legal rights were fixed at the date of annexation. This court must decide the effect, if any, of these amendments expressing the will of the people regarding the rights and duties of Rural Electric Cooperatives to continue to provide, and to extend, i. e., expand, service in an annexed area in which it operated prior to annexation of that area.

As indicated, we find it unnecessary to name the contract that we find to exist between the county and the defendant as either a franchise or a license. We will look only to what flows from the contract.

There are sections of two statutes which, as originally enacted and subsequently amended, complement each other. One is the original authorizing statute for the Resolution concerned here which is found in Session Laws of 1917, Ch. 230, p. 429, § 1; subsequently 69 O.S.1961, § 4; and now 69 O.S.1971, § 1401, that provides the right of public utilities to use the highways for its fixtures upon obtaining proper consent, and carrying the proviso that nothing in the act will infringe upon the right of certain municipalities to require consent to use their streets. The original 1917 statute and its amendment found in 69 O.S.1961, § 4, also specifically provide that the rights of abutting property owners are not abridged by the statute. This provision is not in 69 O.S.1971, § 1401.

The other statute is the Rural Electric Cooperative Act, enacted subsequent to the Resolution here concerned, found in Okl. Session laws, 1939, Ch. 46, § 3(k), setting forth a cooperative's right to use highways and other lands subject to requirements of jurisdictional authorities, which, as amended in 1961 (18 O.S.1961, § 437.2(k)), provides substantially in pertinent part that in event of annexation of an area by a municipality, a cooperative that had been servicing the area was entitled to continue and extend the furnishing of electric energy or the construction and operation of electric facilities in such area without obtaining the consent, franchise, license, permit, or other authority of the annexing municipality. These provisions were carried forward into 18 O.S.1971, § 437.2(k). In the same title, the definition of a "Rural Area" was enlarged in § 437.28, for purposes of the Rural Electric Cooperative Act, to include any area brought within the boundaries of a municipality as a result of annexation.

The statutes must be reconciled with one another, if legally permissible, and given effect to the fullest extent compatible with constitutional provisions of Article 18, § 5(a) and (b) pertaining to granting of franchises by municipalities.

In view of the public importance of the questions involved we have determined to not decide the questioned standing of plaintiff (and of intervenor) to bring this action.

The parties deal extensively with Caddo Electric Cooperative v. State, Okl., 391 P. 2d 234, decided March 31, 1964, without use of the 1961 Legislative Amendments, supra. This court was there concerned with an annexation by a municipality that occurred in 1954 or 1955, the area annexed having been previously served by the Cooperative. The Cooperative continued service after the annexation and built a new "leg" of a distribution line into the area in 1956. We dealt only with the question of the right of the Cooperative to maintain its lines after annexation, and said, in reference to Article 18, Sections 5(a) and 5(b) of the Constitution, and in distin-

guishing City of Okmulgee v. Okmulgee Gas Co. (1929), 140 Okl. 88, 282 P. 640, that in Caddo Electric the Legislature had not attempted to destroy a home rule city's right to grant franchises, as had been the situation in Okmulgee Gas Co. We held that the Cooperative had statutory authority to continue service to its members, and to substituted transfer members, on its pre-annexation distribution lines, but that it was without authority under the Rural Electric Cooperative Act as then applicable to install the new line. The new line was ordered removed.

We therefore note that there is no prohibition of dual rights to furnish electric energy within the boundaries of a municipality. Caddo, supra; Article 18, § 7, Okl. Const., supra, providing that no exclusive franchise shall ever be granted; and Oklahoma Gas and Electric Co. v. Total Energy, Inc. (1972), Okl., 499 P.2d 917, 924. Further, the county's decision to contract and thereby vest rights in defendant as limited by Article 9, Section 47, Oklahoma Constitution, over a county land area not within a municipality, did not involve and had no effect upon the power of a municipality to grant a franchise as provided by the Constitution.

Nor does an un-strained reading of Article 18, §§ 5(a) and 5(b) reveal a prohibition of defendant's activities in this case. Also, the legislative provision in 69 O.S. 1961, § 4, and its predecessor statute in Laws of 1917, providing:

"* * * further, that nothing herein contained shall be construed to grant the right to use the streets or other public places of any city or incorporated town of this State without the consent of such city or incorporated town as required by Article 18 of the Constitution of this State; * * *"

simply refer back to the Constitution, and the omission of Constitutional reference in the otherwise similar provisions found in 69 O.S.1971, § 1401(b), cannot be viewed, in light of statutory history and case precedent, as recognition of a Constitutional prohibition.

Therefore, as in Caddo Electric, so it is here—with an additional ingredient. Defendant had the right by law to maintain its lines and service to its customers as on the day of annexation. In the instant case, there being no Constitutional prohibition of additional activity by defendant after the day of annexation, we may look to the amended law of 1961 that the court and the parties did not believe pertinent in Caddo Electric, the court there saying:

"* * * Since neither party seriously contends that the amendments materially affect their rights in this case, and since the application thereof might infringe upon the provisions of Art. 5, Sec. 52, Oklahoma Constitution, which provides that the Legislature shall have no power to take away such cause of action, or destroy any existing defense after suit has been commenced, we have concluded not to consider these amendments in this decision, and all statutory references in this opinion shall refer to the statute as existing prior to 1961."

As seen earlier, that amended law (18 O.S. 1961, § 437.2(k)) makes a cooperative's authority to continue operation in a newly annexed area dependent on whether the area "has been or shall be" included within a municipality's boundaries as a result of annexation. In the absence of a constitutional prohibition making the retroactive words "has been" inoperative, we find them valid, and if they were questioned we would find the five days time to which they applied (the date of annexation to the effective date of the amendments) de minimis as compared to the nearly nine years that the defendant operated in accordance with the Legislative amendments. Nine years, we add, during which the rights and duties of defendant's contract, as extended by those 1961 Legislative amendments and

concurred in by the city as indicated by its approval of defendant's power sub-station, operated in the annexed area subsequent to the date of annexation to provide service to large business establishments and perhaps ten-fold the number of persons which were being served in the area on the date of annexation.

■ Accordingly, we hold that defendant had, and has, rights and authority for its operation within the annexed area concerned here prior and subsequent to the annexation date of October 21, 1961, pursuant to a valid contract with Cleveland County; that the contract is not void and invalid as being violative of provisions in Article 18, Sections 5(a) and 5(b), Constitution of the State of Oklahoma; that defendant had, and has, authority to operate in the annexed area concerned here in accordance with provisions of the Rural Electric Cooperative Act, 18 O.S.1971, § 437 et seq., the same not being violative of provisions of Article 18, Sections 5(a) and 5(b) of the Oklahoma Constitution; and that defendant does not have to remove any lines, poles, or other equipment over and across the public road abutting on plaintiff's property, and, if there be any, abutting on intervenor's property.

We do not herein consider or determine the right of the municipality to terminate the rights of appellant to furnish service within the annexed area or the period of time appellant may furnish such service without having their rights extended or renewed. See Article 18, Section 5(a), Oklahoma Constitution. In other words, our holding herein is not to be construed as holding that the here recognized right and authority of the R.E.C. is in some way immune from the same competitive problems which confront any other franchise holder, including the necessity of satisfactorily serving the people of the City of Norman or risk the possible loss of its right to do so in a franchise election.

The judgment of the trial court is reversed insofar as it is inconsistent herewith.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, BERRY, HODGES, SIMMS, and DOOLIN, JJ., concur.

BARNES, J., did not participate.