Dear Senator Riley,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 May a county lawfully enter into an agreement for a private company to build, operate and maintain a private toll bridge on land acquired by or on behalf of the county, where the bridge will be connected with nearby public roads and the company will pay to the county a portion of the tolls collected?
 Background
¶ 1 A county in your Senate district proposes to enter into an arrangement with a private company regarding construction and operation of a toll bridge over a river in the county. Under the proposed agreement, the county (with financing through a county-beneficiary public trust) would acquire necessary land on both sides of the river and lease it to the company. The company would construct and operate a toll bridge connecting with public roads on each side and pay to the county, or its designee, a portion of the tolls received. When built, the bridge will be subject to taxation and will provide economic benefits to the county and its residents. Construction of the bridge and effectiveness of the agreement will be subject to a mutually acceptable feasibility study which shows expected bridge tolls will be sufficient to pay the cost of the project, including necessary payments to the county. You ask, is the proposed transaction allowed under applicable State law?
Several legal issues are raised:
 1. Does a private company have the power to build and operate a toll bridge under State law?
 2. Does the county have the power to acquire the land and lease it to a private company?
 3. Does the county have the power to grant a franchise to the private company for the project?
¶ 2 To properly answer your question, it is necessary to analyze: the powers of a private corporation under Oklahoma law to own or operate toll bridges; the powers of a county regarding construction and operation of county roads and bridges, particularly toll bridges; and powers of a county to contract with private corporations as to such bridges.
 I. Powers Of Private Oklahoma Companies Regarding Toll Bridges
¶ 3 Private toll bridges were an important part of the system of roads and highways in Oklahoma prior to statehood and for many years thereafter.[1] At common law private persons were allowed to build and operate ferries and toll bridges, subject to a license from the sovereign;[2] since Oklahoma law incorporates those parts of common law that have not been expressly repealed (12 O.S. 2001, § 2[12-2]), it appears that early day Oklahoma and Territorial Courts accepted the principle. SeePostal Bridge Co. v. State ex rel. Dabney, 282 P. 462, 463-64
(Okla. 1929).
¶ 4 For many years after statehood general corporation statutes contained a lengthy list of purposes for which private corporations could be formed, including constructing wagon roads, bridges, street railways, etc.[3] In 1947 many of the general corporation laws were rewritten and the section listing purposes for formation of private corporations was repealed and replaced with a simpler statute, merely providing that corporations may be formed "for any lawful purpose or purposes."See 1947 Okla. Sess. Laws tit. 18, ch. A, § 9 (codified at 18O.S. Supp. 1947, § 1.9[18-1.9]). This concept has been retained to date, as under the Oklahoma General Corporation Act, corporations are authorized to "conduct or promote any lawful business or purposes." 18 O.S. 2001, § 1005[18-1005](B). By eliminating the lengthy list of allowed purposes, we conclude the Legislature did not intend to eliminate the business purposes for which corporations could be created, but merely to broaden the description to allow any lawful business or purpose.
¶ 5 Further, State statutes relating to roads and bridges still envision participation by certain corporations in the construction and maintenance of county bridges, as follows:
 Any county, by act of the Board of County Commissioners, and any municipality within such county, by a majority of its governing board, and any public service corporation organized under the laws of the State of Oklahoma, may all or either of them jointly contract for the construction and maintenance of bridges across streams running through such county.
69 O.S. 2001, § 610[69-610].
 Any public service corporation organized under the laws of the State of Oklahoma may jointly contract with any municipality, county, or citizen of same, for the joint construction, maintenance, ownership and use of any bridge or bridge approaches over and across any stream, river, or creek, and any such public service corporation may contract with any municipality or county for the purchase of such bridge and for the joint ownership and use thereof by the public service corporation and the public; and the several parties so interested may contract and set aside the part of such bridge or bridges and approaches to be used or maintained by each, and such municipality or county may issue and sell bonds, or levy taxes, to pay for construction or purchase of such bridge or bridges, or interest therein, the same as bonds are issued or taxes levied for other bridge purposes.
Id. § 611.
¶ 6 For purposes of the Title 69 statutes, a "public service corporation" is defined as follows:
 Any transportation or transmission company, any gas, electric, heat, light and power company, any person, firm, corporation, receiver or trustee engaged in such business, and any person, firm, corporation, receiver or trustee authorized to exercise the right of eminent domain or having a franchise to use or occupy any right-of-way, street, alley or public highway, whether along, over or under the same, in a manner not permitted to the general public.
Id. § 233.
¶ 7 Historically, State laws permitted incorporation of entities known as "bridge corporations." See Okla. R.L. 1910 ch. 15, art. VI, §§ 1282-1291; 18 O.S. 1961, §§ 191-201. Under these statutes, creation of a bridge corporation of limited duration was authorized, and pursuant to authorization of the board of county commissioners, such a corporation was allowed to build bridges over streams in the county and collect tolls for bridge passage. See id. Further, in 1911 Okla. Sess. Laws ch. 63, §§ 1-7 (codified as amended at 69 O.S. 1961, §§ 391-397[69-391-397]), counties were authorized to acquire by purchase or condemnation toll bridges in the county, which upon acquisition became part of the county road system. See id. In 1968, when the state transportation code was extensively revised, the bridge corporation statutes and the statutes on county acquisition of toll bridges were repealed. See 1968 Okla. Sess. Laws ch. 415, § 1906. However, there has never been an express repeal of the common law in Oklahoma allowing private persons or entities to build or operate toll bridges. We conclude the common law principle is still effective.
¶ 8 Other statutes relating to agreements between counties and private corporations for construction, ownership and operation of bridges have been retained, but in a modified form. Title 69 O.S. 1961, §§ 187[69-187] and 188 authorized joint construction and/or ownership of bridges between counties and public service corporations. These statutes were recodified in 1968 as 69 O.S.Supp. 1968, §§ 610[69-610] and 611. See 1968 Okla. Sess. Laws ch. 415, §§ 610, 611. However, in the introductory sentence of Section 611, the phrase referring to public service corporations "forthe operation of any public service business, such as a railroad,car line, telegraph or telephone line, electric transmissionline, or toll bridge" was deleted. See 69 O.S. 1961, § 188[69-188]; 1968 Okla. Sess. Laws ch. 415, § 611 (emphasis added). In the same legislation, the present Section 233, defining a "public service corporation," was codified. See 1968 Okla. Sess. Laws, ch. 415, § 233 (codified at 69 O.S. Supp. 1968, § 233[69-233]). While there are still such entities as "railroad corporations" (66O.S. 2001, § 1[66-1]), other corporations previously listed in Section 187 of Title 69 as "public service corporations" no longer exist as discrete corporate entities; yet, private companies continue to operate telephone, telegraph and electric transmission lines under the general corporation statutes. As earlier discussed, and as demonstrated by the 1947 amendments to the general corporation statutes, by deleting the above phrase from Section 611 the Legislature did not intend to eliminate the right to conduct the various kinds of businesses listed.
¶ 9 Although the reasoning is somewhat circular, in Section 233 of Title 69, the Legislature has chosen to define a "public service corporation" for purposes of the statutes on roads, bridges and ferries, as including any entity "authorized to exercise the right of eminent domain or having a franchise to use or occupy any right-of-way, street, alley or public highway, whether along, over or under the same, in a manner not permitted to the general public." As discussed later in this Opinion, a franchise is required to be granted by the county for operation of a toll bridge; therefore, a company that receives such a franchise becomes a public service corporation under the defining statute. Once it is determined that a company is a "public service corporation" under Section 233, the provisions of Sections 610 and 611 of Title 69 plainly confer on such corporation the right to contract with the county for construction, maintenance and operation of a bridge, whether as a toll or a free bridge.
¶ 10 While a city or county may not invest public funds in a private enterprise (Lawrence v. Schellstede, 348 P.2d 1078,1082 (Okla. 1960)), under the principles set out in Way v. GrandLake Association, Inc., 635 P.2d 1010, 1018 (Okla. 1981) andBurkhardt v. City of Enid, 771 P.2d 608, 611 (Okla. 1989), a governmental entity may properly contract with a private corporation for services which fulfill a public purpose, provided adequate controls are built into the agreement. In VFW v.Childers, 171 P.2d 618 (Okla. 1946), the court, while holding the legislative appropriation in that case was not for a public purpose, said "the state may [in a proper manner] make use of a private agency for the public use." Id. at 624. As held inSublett v. City of Tulsa, 405 P.2d 185, 197 (Okla. 1965) andState ex rel. Brown v. City of Warr Acres, 946 P.2d 1140,1144 (Okla. 1997), the circumstance that a private company may benefit financially does not mean that a public purpose is not being satisfied. Thus, based on a determination by the county commissioners that a toll bridge would serve a valid public purpose, a private corporation can provide this service by a contract (i.e., a franchise agreement) with adequate consideration.
¶ 11 Burkhardt held that "[c]onsideration may be measured by benefit to one party or by forbearance, detriment, loss or responsibility assumed by the other party." Burkhardt,771 P.2d at 611. However, such an agreement could not be exclusive or create a monopoly. Okla. Const. art. II, § 32. Whether a particular project would serve a proper public purpose, or whether a particular franchise agreement would impose the necessary controls required by the Way, Burkhardt, and Brown
decisions, involves questions of fact which cannot be addressed in an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 II. Dillon's Rule And Powers Of Counties
¶ 12 Does the county have the power to lease the land needed for the bridge and grant a franchise to a private company for toll bridge operation? Under the legal principle known as "Dillon's Rule," a county or municipality possesses and can exercise only those powers granted by the State in express words, or those necessarily or fairly implied or incidental to the powers expressly granted and essential to the declared objects and purposes of the public entity. Morland Dev. Co. v. City ofTulsa, 596 P.2d 1255, 1258 (Okla. 1979) (Barnes, J., concurring); Dev. Indus, Inc. v. City of Norman,412 P.2d 953, 956 (Okla. 1966).
¶ 13 Development Industries held that the power of a city to enact zoning ordinances was implied from state statutes authorizing municipalities to regulate land use. Id. Morland
ruled a city had power to enact flood plain zoning under a statute allowing a municipal governing body to regulate density, size and spacing of buildings, and other structures. Morland,596 P.2d at 1259 (Barnes, J., concurring). Thus, under proper circumstances, a county may be authorized to exercise powers not expressly granted by statute, where the power is necessarily or fairly implied or incidental to the powers expressly granted.
 Expressly Granted Powers Of Counties Pertaining To Roads And Bridges
¶ 14 Counties, acting by and through their boards of county commissioners, have the power to buy property and to sell or otherwise convey county-owned real or personal property as deemed conducive to the interests of county inhabitants. 19 O.S. 2001,§ 1[19-1](3); 19 O.S. Supp. 2003, § 339[19-339](A)(1).[4] Counties also have the power to lay out roads and construct bridges and to authorize the use of public roadways by public utilities and other persons for installation and operation of pipes, conduits, lines, poles and other structures. Id. § 339(A)(3); 2004 Okla. Sess. Law Serv. ch. 137, § 1(A), (B) (amending 69 O.S. 2001, §1401[69-1401](A), (B)). The board of county commissioners of each county has the duty to "construct and maintain as county highways those roads which best serve the most people of the county," and has "exclusive jurisdiction over the designation, construction and maintenance and repair of all of the county highways and bridges therein." Id. § 601(A). Counties also have the power to plan and construct "limited access facilities." Id. § 1331. Additionally, a county is authorized to acquire, lease or otherwise dispose of land and facilities "of any and every nature whatever that can be used in securing or developing industry within or near the . . . county." 62 O.S. 2001, § 652[62-652]. A city or county may lease property to a public trust with the governmental entity as beneficiary. See Morris v. City ofOklahoma City, 299 P.2d 131, 133-34 (Okla. 1956). Under proper circumstances a county may also, on determination that the transaction is conducive to the public good, lease county property to a private entity. Bd. of County Comm'rs v. Mullins,217 P.2d 835, 841 (Okla. 1950); A.G. Opin. 76-365, 441.
¶ 15 As earlier discussed, 69 O.S. 2001, §§ 610[69-610] and 611 specifically authorize a county or city to make contracts with a public service corporation relating to construction and maintenance of bridges over streams in the jurisdiction. Finally, counties are authorized to create transportation authorities under 60 O.S. Supp. 2003, § 176[60-176](A) (i.e., public trusts) for "planning, financing, and constructing transportation-related projects" located within the county. 68 O.S. Supp. 2003, §1370.7[68-1370.7](A). The statute provides:
 A. Any combination of cities, towns and counties, by resolution of their governing boards, may jointly create a transportation authority pursuant to the provisions of Section 176 of Title 60 of the Oklahoma Statutes for the purpose of planning, financing and constructing transportation-related projects located within the boundaries of such cities, towns or counties. An authority created pursuant to the provisions of this subsection shall have the powers granted pursuant to the provisions of Section 176 of Title 60 of the Oklahoma Statutes in addition to the powers granted pursuant to the provisions of this section. The combination of cities, towns and counties creating the authority shall be designated the beneficiary of the authority. The boundaries of the authority shall be coterminous with the boundaries of the cities, towns or counties creating the authority.
. . . .
 J. A transportation authority created pursuant to this section may provide for the financing of a toll bridge utilizing any revenue measures available pursuant to subsections A through I of this section in combination with revenue derived from toll charges. Such combination financing shall be fully described in the resolution of the transportation authority which authorizes the construction of such toll bridge. The resolution shall set out minimum and maximum percentages of the total debt which shall be retired utilizing revenue received from toll charges.
Id. (emphasis added). Thus, while counties have exclusive jurisdiction to determine the designation, construction and maintenance of necessary roads and bridges (69 O.S. 2001, §601[69-601](A)), the Legislature has provided at least four methods by which a county may plan, build or operate a bridge: (1) a county-owned and -managed project; (id. §§ 601, 1401(A), (B)); (2) a cooperative project with another county or municipality; (3) a joint project pursuant to contract with a public service corporation (id. §§ 610, 611); or (4) a project utilizing a transportation authority (68 O.S. Supp. 2003, § 1370.7[68-1370.7](A)).
¶ 16 As held in Board of County Commissioners v. Warram,285 P.2d 1034, 1040 (Okla. 1955), where the Legislature has assigned a field of governmental action to a political subdivision, additional means of carrying out the same function or purpose may be authorized. Id. As stated earlier, under "Dillon's Rule" a county may also exercise powers fairly implied or incidental to the powers expressly granted. Is leasing a bridge site or granting a toll bridge franchise to a private company such a power "fairly implied" from a county's general road planning and building functions? We conclude that it is.
¶ 17 A county is authorized to acquire, lease or otherwise dispose of land and facilities "of any and every nature whatever that can be used in securing or developing industry" within or near the county. 62 O.S. 2001, § 652[62-652]. A city or county may lease property to a public trust with the governmental entity as beneficiary. Morris, 299 P.2d at 133-34. Under proper circumstances a county may also, on determination that the transaction is conducive to the public good, lease county property to a private entity. Mullins, 217 P.2d at 841; A.G. Opin. 76-365, 441. As earlier discussed, a county may exercise not only those powers expressly given to it but also those "necessarily or fairly implied" from, or "incidental" to these express powers. Shipp v. Southeastern Okla. Indus. Auth.,498 P.2d 1395, 1398 (Okla. 1972); Jackson v. Bd. of CountyComm'rs, 167 P. 227, 228 (Okla. 1917); see A.G. Opin. 87-58, 104. We conclude that by necessary implication from the broad power to oversee county roads and bridges and the express power to contract with a private company in this regard, a county has authority to lease real property to a public trust or to a private entity to construct, operate and maintain a toll bridge, based on a determination that the project is "conducive to the interests of the inhabitants." 19 O.S. 2001, § 1[19-1].
 III. The Nature Of A Franchise And Related Powers Of Counties
¶ 18 Central to the question presented is the right of a private company to build and control a bridge and charge tolls for passage where the bridge will be connected with the county (public) roads. This right is not one enjoyed by everyone, but must be granted by the sovereign in the nature of a franchise.Okla. Elec. Coop., Inc. v. Okla. Gas Elec. Co.,982 P.2d 512, 515 (Okla. 1999); State ex rel. Williamson v. Garrison,348 P.2d 859, 863 (Okla. 1959). A franchise is a special right or privilege of a public nature that is conferred by governmental authority upon a person or corporation to do some act or acts, which generally does not belong to citizens by common right.Id. The act or acts in question must be such that they cannot be exercised without the express permission of the sovereign power. Id. Thus, under the definition of a public service corporation in 69 O.S. 2001, § 233[69-233], granting the right to use a public highway in a manner not permitted to the general public would require a franchise, but can a county grant such a franchise? Article XVIII, Sections 5(a) and 5(b) of the Oklahoma Constitution expressly confer on cities and towns the power to grant franchises, but no such express authorization appears for counties. Applying Dillon's Rule, can the power be fairly implied from express statutory authorizations?
¶ 19 The crucial point is whether a board of county commissioners has legal authority to grant special rights or privileges to build and operate a bridge and collect tolls, in a manner not available to the general public. Whether the Legislature or the county commissioners calls the right a "franchise," "license," "permit," or some other name is not necessarily dispositive. This issue is discussed in Resh, Inc.v. Oklahoma Electric Cooperative, Inc., 516 P.2d 803, 809
(Okla. 1973), where the court examined the nature of the authorization given by a board of county commissioners in 1937 to a rural electric cooperative to use county roads and rights-of-way for electric lines and poles. Of the need to call the right a "franchise," the court said, "[b]y whatever name, when defendant acted pursuant to the authority given, a contract in the nature of a franchise came into being."Id.; see Town ofGans v. Cookson Hills Elec. Coop., Inc., 288 P.2d 707, 711
(Okla. 1955).
 A. Implied Powers Of A County To Lease Property Or Grant Franchises To Private Companies
¶ 20 As earlier stated, a county may, on determination that the transaction is conducive to the public good, lease county property to a private company or entity. A.G. Opin. 76-365. Regarding franchises, while cities and towns are expressly authorized to grant franchises under the Oklahoma Constitution, Article XVIII, Sections 5(a), 5(b), no similar constitutional provision expressly authorizes counties to do so. However, at least one section of the Constitution indicates that the framers of the Constitution recognized the power of a county to grant franchises. Article IX, Section 18 dealing with the power of the Corporation Commission to oversee dealings of public service companies, provides, in pertinent part:
 That nothing in this section shall impair the rights which have heretofore been, or may hereafter be, conferred by law upon the authorities of any city, town or county to prescribe rules, regulations, or rates of charges to be observed by any public service corporation in connection with any services performed by it under a municipal or county franchise granted by such city, town, or county, so far as such services may be wholly within the limits of the city, town, or county granting the franchise.
Id. (emphasis added).
¶ 21 If the drafters of the Constitution did not envision a county granting a franchise, it is hard to discern why such a provision would have been put in this organic document. To the contrary, there is ample evidence that courts in the early days of statehood accepted the premise, without much discussion, that a county has the power to grant a franchise, and indeed, to grant a franchise for the operation of a toll road or toll bridge. SeeHamill v. Hawks, 58 F.2d 41, 45-46 (10th Cir. 1932) rev'd. onother grounds, 288 U.S. 52 (1933). Such a franchise would, under the provisions of Article IX, Section 18 of the Oklahoma Constitution, be subject to the power of the county to regulate rates or charges.
¶ 22 Statutes enacted shortly after statehood provided for creation of bridge corporations (see Okla. R.L. 1910 ch. 15, art. VI, § 1282), and Section 1283 of R.L. 1910 provided, "[n]o such corporation shall construct or take tolls on a bridge until authority is granted therefor by the board of county commissioners of the county or counties in which it is to be located." Id. In Postal Bridge, the issue was whether a corporation, which acquired the right from county commissioners to operate a toll bridge in 1920 under the bridge corporation statutes, could assign its rights to another legal entity.Postal Bridge, 282 P. at 463. Although the term "franchise" does not appear in the bridge corporation statutes, PostalBridge consistently referred to the right to build and operate the bridge as a "franchise," and held, "[w]e are of the opinion that the De Luxe Bridge Company acquired a valid franchise, and as such was authorized to build, maintain, and operate the toll bridge in question." Id. at 464.
¶ 23 In Hawks v. Hammill, 288 U.S. 52 (1933), while allowing state officials to challenge whether a right to operate a toll bridge could be granted in perpetuity, the United States Supreme Court likewise referred to the right granted by county commissioners as a "franchise." Id. at 53, 60, 62. Thus, in both cases the courts construing Section 1283 of the bridge corporation act (later codified as part of Title 18), characterized the authorization granted by the county commissioners as a "franchise," and significantly did not hold that the county commissioners lacked authority to grant such a franchise.
¶ 24 Further indication that the Oklahoma Supreme Court approves the concept of county commissioners granting franchises comes from situations pertaining to early day toll roads. Sections 5626 and 5627 of Bunn's Compiled 1921 state statutes on wagon road corporations provide that wagon road corporations may lay out routes for roads, which must be approved by the board of county commissioners; "such approval authorizes the use of allpublic lands and highways over which the survey runs," and the corporations may charge tolls approved by the board of county commissioners. Bunn's Comp. Stat. 1921 ch. 34, art. XVIII, § 5626 (emphasis added). As provided in Section 5627, if a wagon road corporation charges fees not approved by the county "the corporation shall forfeit its franchise, and must pay to the party so charged one hundred dollars as liquidated damages," but this is the only section in the wagon road corporation statutes which uses the word "franchise." Id. In Gibson v. RogersCounty, ex rel. Hall, 181 P. 720 (Okla. 1919), the Oklahoma Supreme Court reviewed a situation in which a board of county commissioners had approved construction and operation of a toll road in 1916 under these statutes, characterizing the grant as a "franchise," and holding "[t]here is nothing in the record to disclose why the county commissioners did not have jurisdiction [to grant the franchise]."Id. at 722. Again, the court seems to have accepted without prolonged discussion that a board of county commissioners, being in general charge and control of public roads in a county, has authority to grant a franchise to build and operate a toll road or toll bridge. Id. No reported Oklahoma cases reject this proposition.
¶ 25 Although the statutes authorizing wagon road corporations were repealed in 1961, the right to engage in this kind of business was not eliminated, as corporations were already allowed to be created for "any lawful purpose or purposes," (18 O.S.1951, § 1.9[18-1.9]; see 18 O.S. 2001, § 1005[18-1005](B)), and the Oklahoma and United States Supreme Courts recognized an Oklahoma corporation could lawfully operate a toll bridge pursuant to a franchise from a county. See Hamill v. Hawks, 58 F.2d at 45-46;Hawks v. Hammill, 288 U.S. at 53, 60, 62; Postal Bridge,282 P. at 463. Therefore, we conclude that recognition by the courts of the power of a board of county commissioners to grant a franchise for construction and operation of a toll bridge or toll road by a private corporation has not been abrogated by subsequent law changes.
¶ 26 In accord is Irvine Toll Bridge Co. v. Estill County,275 S.W. 634 (Ky. 1925), as to the implied authority of a board of county commissioners to grant a franchise for a toll bridge under a statute, providing, "[t]he fiscal court of each county shall have general charge and supervision of the public roads and bridges therein, and shall prescribe necessary rules and regulations for repairing and keeping the same in order, and for the proper management of all roads and bridges in said county under and subject to the provisions of this act." Id. at 636-37 (quoting Ky. Rev. Stat. § 4306 (Carroll 1909)).
¶ 27 Because the common law right for a private person or entity to build and operate a toll bridge subject to a franchise from the sovereign still exists under Oklahoma law, and further because a county, acting through its board of county commissioners, has broad jurisdiction to lay out and control the building and operation of roads and bridges in the county (including the power to contract with private corporations for such functions), we conclude that, by necessary implication from its express powers, a county has lawful authority to lease land and to enter into a franchise agreement with a private corporation for the construction and operation of a toll bridge, subject to appropriate controls.
 B. Franchise Requirements
¶ 28 A franchise to use public roads and ways in a manner not available to the general public is subject to the restriction that the franchise must serve the public good by providing services to the public on favorable terms. See Bouziden v.Alfalfa Elec. Coop. Inc., 16 P.3d 450, 462 (Okla. 2000). Thus, any grant of a franchise or other privilege by the government, or a branch thereof, to a private entity for operation of a toll bridge must be accompanied by a determination that the project will serve a valid public purpose. See, e.g., S.McAlester-Eufaula Tel. Co. v. State ex rel. Baker-ReidtMercantile Co., 106 P. 962, 968 (Okla. 1910). Any decision by the board of county commissioners to allow the project to go forward must, in our opinion, be accompanied by an express determination of the board that the project serves a public purpose, is supported by adequate consideration and subjects the developer to plain and enforceable restrictions and standards.Brown, 946 P.2d at 1144; Way, 635 P.2d at 1018. One such restriction is the retention by the county of the power to approve rates and charges under the Oklahoma Constitution ArticleIX, Section 18.
¶ 29 Since a lease of land or easement to use of county lands involving permanent improvements to the county road system, such as a bridge, does not grant a fee title, (see Marland v.Gillespie, 33 P.2d 207, 209 (Okla. 1934)), the agreement would, on termination, result in the bridge becoming property of the county.[5] Thus, it is imperative that the county commissioners determine the economic feasibility of the project before entering into such an agreement, and assure that no financial obligation of the county extending past the current fiscal year is created under such agreement. Otherwise, a continuing financial obligation of the county (i.e., a debt) might be created, requiring voter approval under the Oklahoma Constitution Article X, Section 26(a). See Mullins,217 P.2d at 841.
¶ 30 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. A county acting through its board of county commissioners is authorized to acquire land and lease such land to a public trust or to a private corporation provided the transaction is for a public purpose, and is determined conducive to the interests of county inhabitants. 19 O.S. 2001, §§ 1(3), 339(A)(1).
 2. A county acting through the board of county commissioners is authorized to grant a franchise or other permit to a private corporation for construction and operation of a toll bridge, provided there is a determination the project serves a public purpose. 18 O.S. 2001, § 1005(B); 68 O.S. Supp. 2003, § 1370.7(J); 69 O.S. 2001, §§ 1331(A), 1401(A); Hamill v. Hawks, 58 F.2d 41, 44 (10th Cir. 1932), rev'd. on other grounds, 288 U.S. 52 (1933); Postal Bridge Co. v. State ex rel. Dabney, 282 P. 462, 463-64 (Okla. 1929); State ex rel. Brown v. City of Warr Acres, 946 P.2d 1140, 1144 (Okla. 1997); Way v. Grand Lake Ass'n, Inc., 635 P.2d 1010, 1018 (Okla. 1981).
 3. Whether a particular transaction by a board of county commissioners is conducive to the interests of county inhabitants and is for a public purpose is a question of fact which cannot be addressed in an Attorney General's opinion. 74 O.S. 2001, § 18b(A)(5).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 LYNN C. ROGERS Assistant Attorney General
[1] See Danny Goble, Tulsa! Biography of the American City 56-57 (1997); Garvin County v. Lindsay Bridge Co.,124 P. 324, 325 (Okla. 1912).
[2] See Proprietors of Charles River Bridge v. Proprietors ofWarren Bridge, 36 U.S. (1 Pet.) 420, 432 (1837).
[3] See Okla. R.L. 1910 ch. 15, art. I, § 1220; 18 O.S. 1941, § 12[18-12].
[4] See 2004 Okla. Sess. Law Serv. ch. 5, § 6 (amendments were made in the 2004 Second Regular Session of the Forty-Ninth Legislature; however, they are not germane here).
[5] See Postal Bridge, 282 P. at 464; Grove Bridge Co. v.State ex rel. Hampton, 271 P. 846 (syllabus) (Okla. 1928);Foley v. State ex rel. King, 11 P.2d 928, 930 (Okla. 1932). In each of the foregoing cases the franchises had reverter clauses.